**RAILWAY LABOR EXECUTIVES' ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

Chicago and North Western Railway Company, Chicago, Saint Paul, Minneapolis and Omaha Railway Company, Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Southern Pacific Railroad Company, Intervening Defendants.

**Civ. A. No. 4047–56.**

United States District Court
District of Columbia.
April 12, 1957.

James L. Highsaw, Jr., Washington, D. C., with whom Clarence M. Mulholland, Toledo, Ohio, Edward J. Hickey, Jr., and William G. Mahoney, Washington, D. C., were on the brief, for plaintiff.

E. Riggs McConnell, Washington, D. C., with whom Victor R. Hansen, Asst. Atty. Gen., Oliver Gasch, U. S. Atty., and James E. Kilday, Washington, D. C., were on the brief, for the United States.

H. Neil Garson, Asst. Gen. Counsel, Washington, D. C., with whom Robert W. Ginnane, Gen. Counsel, of Washington, D. C., was on the brief, for the Interstate Commerce Commission.

Edgar Vanneman, Jr., Chicago, Ill., with whom Martin A. Meyer, Jr., Washington, D. C., was on the brief, for Chicago & N. W. Ry. Co., and Chicago, St. P., M. & O. Ry. Co.

Edwin R. Eckersall and William J. Quinn, Chicago, Ill., and Lawrence Cake, Washington, D. C., were on the brief, for Chicago, M., St. P. & P. R. Co.

Elmer B. Collins, Omaha, Neb., with whom W. R. Rouse, F. J. Melia, James A. Wilcox, Omaha, Neb., and Lawrence Cake, Washington, D. C., were on the brief, for Union P. R. Co.

Edward M. Reidy, Washington, D. C., for Southern Pac. Co.

Before DANAHER, Circuit Judge, and HOLTZOFF and CURRAN, District Judges.

CURRAN, District Judge.

This is a civil action arising under the Interstate Commerce Act, 49 U.S.C.A. §§ 1(4), 3(4), 5(2), 5(4), 5(7) and 15 (3), brought by the plaintiff, Railway Labor Executives' Association (hereinafter called Association), to set aside and annul orders of the Interstate Commerce Commission (hereinafter called Commission), entered March 5 and July 16, 1956, in a proceeding entitled Railway Labor Executives' Association, et al. v. Chicago and North Western Railway Company, et al., 298 I.C.C. 69, docket number 31876, and number 31876 (subno. 1), Same v. Same, and to compel the Commission to consider and rule on the merits of the controversy. Jurisdiction is claimed under 28 U.S.C., §§ 1336, 1398, 2284 and 2321–2325.

The order of March 5, 1956, which dismissed the two complaints by the plaintiff, is based upon the Commission's conclusion set forth in its Report, which states in part as follows:

"Upon consideration of both complaints we conclude that they are legally insufficient in that they fail

to set forth facts which show, or tend to show, that the actions complained of result, or may result, in a violation of the Interstate Commerce Act, or of any other act under which we have jurisdiction."

The order of July 16 is the final action of the Commission denying plaintiff's petition for reconsideration.

Pursuant to 28 U.S.C. § 2284, plaintiff, on November 21, 1956 filed a motion asking the District Court to request the Chief Judge of the United States Court of Appeals for the District of Columbia Circuit, to designate a three-judge court to hear and determine the complaint. This motion was granted on December 10, 1956 and a three-judge statutory court was designated on December 13, 1956.

On November 15, 1956 the District Court granted the joint motion of the Chicago and North Western Railway Company (hereinafter called North Western) and the Chicago, St. Paul, Minneapolis and Omaha Railway Company (hereinafter called St. Paul) to intervene as defendants in the proceeding. Similar motions were granted on November 20, 1956 permitting the intervention of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (hereinafter called Milwaukee) and the Union Pacific Railroad Company (hereinafter called Union Pacific) as defendants, and on November 28, 1956 the Court granted the motion of the Southern Pacific Company (hereinafter called Southern Pacific) to intervene as a defendant. Each of these intervenors filed answers to the complaint. The Interstate Commerce Commission filed its answer to the complaint on December 7, 1956 and the United States of America filed its answer on January 7, 1957.

The plaintiff is a voluntary, unincorporated association with which are affiliated standard, national and international railway labor organizations. Certain of these organizations are the duly designated representatives, under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., for the purposes of collective bargaining, of the employees of the railroads, which are intervening defendants, and the plaintiff is acting on behalf of these employees. The complaints filed before the Commission, purporting to invoke certain provisions of Section 5 and Sections 1(4), 3(4) and 15(3) of the Interstate Commerce Act, sought to prevent North Western from discontinuing the interchange and operation over its line between Chicago, Illinois and Omaha, Nebraska, of cars composing certain passenger trains operated over connecting railroads between Chicago and various western cities, including Los Angeles and San Francisco, California, Portland, Oregon and Denver, Colorado. The purpose of the complaints was to prevent or to obtain compensation under Section 5(2)(f) of the Interstate Commerce Act for alleged adverse effects of such discontinuance of interchange of the cars composing the trains upon employees of North Western engaged directly or indirectly in the operation of the trains over its line between Chicago and Omaha.

For years prior to October 1955, North Western, Union Pacific and Southern Pacific interchanged and operated certain through passenger train service between Chicago and San Francisco, and North Western and Union Pacific interchanged and operated passenger trains between Chicago and Los Angeles, California and Denver, Colorado and Portland, Oregon. Until October, 1955 the trains involved operated over the tracks of North Western between Chicago and Omaha, where crews of Union Pacific took charge of the trains. Similar arrangements existed for the trains which were entered upon Southern Pacific tracks further west. Each of the railroads operated the trains over its own tracks but not over the tracks of either of the other railroads. Each of the railroads furnished its own locomotives and crews for operation of the trains over its own tracks except one train operated by North Western between Chicago and Omaha and by Union Pacific between Chicago and Denver, which train was hauled by the same locomotive over the

lines of both railroads between Chicago and Denver. In October, 1955 the routing of the trains involved was changed in that the line of Milwaukee was used to transport the trains over its lines between Chicago and Omaha. The plaintiff alleges that the changes in routes have affected certain employment rights of the employees of their labor organizations, in that the substitution of Milwaukee for North Western has resulted in hardship for between 700 and 1250 employees of North Western.

After filing complaints before the Commission the plaintiff instituted action in the United States District Court in Chicago in which it sought an injunction from that Court to restrain the railroads from changing the said routing, pending decision by the Commission on the complaints. The District Court in Chicago entered findings of fact and conclusions of law on October 27, 1955 in which it denied the injunction and found that the consistent opinions of the Commission over a long period of years had held that the Commission lacked jurisdiction of the subject matter of the complaints.

Plaintiff contends here that the arrangements between the connecting railroads for the operation of through passenger train service by means of an interchange of equipment belonging to each of the carriers require Commission approval under Section 5(2) (a) of the Interstate Commerce Act; and that the Commission erred in dismissing, on the basis of legal insufficiency and without a hearing on the merits, the application of plaintiff for continuance of the existing train service.

The defendants contend that the order of the Commission to dismiss the complaints is lawfully correct in every respect, that the Commission has no jurisdiction over the operation, discontinuance or curtailment of passenger service, and was therefore without authority to prevent North Western from discontinuing, or Milwaukee from commencing, interchange and operation of the subject trains over their respective lines between Chicago and Omaha; that neither the prior interchange between North Western, Union Pacific and Southern Pacific, nor the present interchange with Milwaukee of the cars composing the passenger trains operated by each of the railroads over its own line, was a "transaction" involving consolidation, merger, purchase, contract to operate or acquisition of control or management of the property of the three railroads in a common interest, subject to the Commission's jurisdiction under Section 5(2)–(7) of the Interstate Commerce Act; that the Commission did not act arbitrarily or unlawfully in dismissing the plaintiff's complaint; that the Commission's Report shows that it recognized alleged possible adverse effects that North Western's discontinuance of operating the trains might have upon some of its employees, but that it did not err in failing to make "specific findings" concerning such effects on employees or public interest in their welfare, particularly since it had no jurisdiction of such discontinuance, and that there was no further factual data presented from which the Commission could have made "specific findings" with respect to the alleged adverse effects upon the employees; that the construction sought by plaintiff would do violence to the intent and purpose of the Interstate Commerce Act; that plaintiff has no real legal theory of its case; that the railroads here have done no more than they are required by law to do; that the Commission has traditionally conceded that carriers must be allowed wide latitude in the operation of passenger service; that the Commission reached the only conclusion possible in dismissing the plaintiff's complaints and that plaintiff is bound by the decision of the Commission.

According to the plaintiff, two basic questions are presented:

I. Do the provisions of Section 5(2) (a) (i) of the Act requiring the approval of the Commission of any lease by one railroad of the properties, or any part thereof, of another railroad or of any contract by one railroad to operate the

properties, or any part thereof, of another railroad, apply to an arrangement between two or more connecting railroads by which through train service is provided between points on the lines of said connecting carriers by trains composed of equipment belonging to each participating railroad, and such equipment is maintained when on the lines of a non-owning carrier and its use on such lines is paid for by such carrier in accordance with a governing contract between the participants?

II. Do the provisions of Section 1(4), 3(4) and 15(3) of the Act authorize the Commission to direct, as necessary and desirable in the public interest, the continuance of an existing through passenger train service serving through routes when the discontinuance of such service will deprive a substantial number of railroad employees of their jobs and, claims plaintiff, adversely affect many communities?

Section 5(2) (a) principally relied upon by plaintiff reads in part as follows:

"It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b)—

"(i) for two or more carriers to consolidate or merge their properties or franchises, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; * * *"

Plaintiff takes the position that the new arrangement for interchange of equipment is a lease or "transaction" which, not having been submitted to the Commission for approval, is in violation of Section 5(4) of the Act, which provides in part as follows:

"It shall be unlawful for any person, except as provided in (2), to enter into any transaction within the scope of subparagraph (a) thereof, or to accomplish or effectuate, or to participate in accomplishing or effectuating, the control or management in a common interest of any two or more carriers, however such result is attained * * *".

██ The plaintiff argues that the interchange between the connecting railroads of the cars composing the trains involved, and the operation of the trains by each railroad with its own locomotives and crews over its line was a transaction subject to the provisions of Section 5(2) of the Interstate Commerce Act. In brief, the plaintiff would have us construe the "purchase, lease, or contract to operate" clause of Section 5(2) (a) (i) separate and apart from the other clauses of the paragraph. However, all the clauses of the paragraph should be construed together and the clause in question should not be taken out of context.

██ No facts are alleged tending to show that the joint rail service provided by the participating rail carriers is a transaction involving control, either by consolidation, merger, purchase, lease, contract to operate or otherwise, within the meaning of Section 5(2) (a) of the Act. Rather the complaint discloses a mere interchange of cars or locomotives between carriers, a transaction in no way alleged legally to involve control of another carrier. Such a routing arrangement is not a transaction within the scope of Section 5(2) (a) and therefore does not require Commission approval. The general purpose of Section 5(2) is to permit the lawful accomplishment of transactions otherwise made unlawful by law. We hold that Section 5(2) is not applicable to interchanges of carrier equipment which do not effect control of two or more carriers in a common interest. It follows, therefore, that North Western could discontinue and Milwaukee could commence operating the trains without the approval of the Commission.

The test of a transaction under Section 5(2) is not, as plaintiff contends, whether it has an adverse effect on railroad employees, but whether it involves a consolidation or acquisition of control or management over two or more railroads in a common interest.

■ Plaintiff's contention that, on the same facts, Sections 1(4), 3(4) and 15 (3) of the Act afford "a basis for Commission action" to require the establishment and continued maintenance of through routes and joint passenger rates and "to direct rail service to provide such through routes with through service by means of interchange of equipment", under the circumstances of this case, falls essentially short of stating a basis for relief. The aforementioned Sections are as follows:

"1(4) It shall be the duty of every such common carrier establishing through routes to provide reasonable facilities for operating such routes and to make reasonable rules and regulations with respect to their operation, * * *.

"3(4) All carriers subject to the provisions of this part shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines and connecting lines, and for the receiving, forwarding, and delivering of passengers or property to and from connecting lines; * * *.

"15(3) The Commission may, * * * establish through routes, joint classifications, and joint rates, fares, or charges, applicable to the transportation of passengers or property by carriers subject to this part * * * and the terms and conditions under which such through routes shall be operated. * * *"

There is no complaint that the change in the routing of the through trains resulted in any cancellation of a through route or joint rate which was formerly in effect. No facts are alleged and no proof was given that would show or tend to show that the defendants have failed to provide reasonable facilities for operating through passenger routes, as required by Section 1(4). Furthermore, no facts are alleged and no proof offered that would show or tend to show that the defendants have failed to afford all reasonable, proper and equal facilities for the receiving, forwarding and delivering passengers to and from connecting lines within the meaning of Section 3(4). We therefore agree with the Commission that the complaints filed by the plaintiff with the Commission are legally insufficient for their failure to allege facts which show or would tend to show that the acts complained of result, or may result, in violation of the Act.

■ One more matter deserves comment. The Commission has consistently held that the through transit arrangements herein involved do not require Commission approval under the provisions of Section 5(2) of the Act. This administrative interpretation is entitled to great weight by the Courts. See New York Central Securities Co. v. United States, 287 U.S. 12, 24, 53 S.Ct. 45, 77 L.Ed. 138. However, plaintiff contends that even though the Commission's interpretation of Section 5(2) has been consistent over a period of years, this Court should require the Commission to adopt an interpretation of the Civil Aeronautics Board, whereby the Board has held, under comparable language of the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq., that it had jurisdiction over the leasing and operation by one airline of the aircraft of another line. With equal logic it might be argued that the Civil Aeronautics Board should have followed the interpretation of the Commission. The real answer is that the two Acts are different. Congress clearly considered the regulation of air transportation to present quite different problems from those involved in rail transportation. It might well have seemed to Congress that the ready interchange of rail equipment presents no such safety and operational factors as are so obvious in transportation by air. We quite agree

 

that the Commission's view of its own problems does not depend upon what the Board does in the administration of its Act.

We are in complete accord that the Commission did not act arbitrarily or unlawfully in dismissing the complaints without conducting hearings, or in denying plaintiff's petitions for a reconsideration. This action is dismissed and counsel for the defendants will submit an appropriate order not inconsistent with this opinion.