**SHIP-BY-TRUCK CO., Inc., d/b/a Graham Ship-By-Truck Company; Graves Truck Line, Inc.; Topeka Motor Freight, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Stevens Express, Inc.; S. & C. Transport Company, Inc.; and Spencer Brothers, Inc., Intervening Defendants.

No. KC–1564.

United States District Court
D. Kansas.

Sept. 6, 1962.

Tom B. Kretsinger, Kansas City, Mo., and Jeff Robertson, Topeka, Kan., for plaintiffs.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, and Newell A. George, U. S. Atty., for U. S.

Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Asst. Gen. Counsel, and Harry Horak, for Interstate Commerce Commission.

James F. Miller, Kansas City, Mo., for intervening defendants S. & C. Transport Co., Inc., and Stevens Express, Inc.

Don Hults, Lawrence, Kan., for intervening defendant, Spencer Bros., Inc.

Before HILL, Circuit Judge, and STANLEY and BOHANON, District Judges.

HILL, Circuit Judge.

This is a civil action brought under the provisions of Sections 1336, 1398, 2321–2325 of Title 28 U.S.C., to set aside and annul orders of the Interstate Commerce Commission (Commission) entered in Docket No. MC–FC–63432, Stevens Express, Inc., Transferee, and S. & C. Transport Co., Inc., Transferor, and Docket No. MC–FC–63698, Stevens Express, Inc., Transferee, and Spencer Bros., Inc., Transferor. The effect of these orders was to grant approval, under Section 212(b) of the Interstate Commerce Act (49 U.S.C.A. § 312(b),[1] to a proposed sale and transfer by S. & C. Transport Co., Inc., (S. & C.) to Stevens Express, Inc., (Stevens) of a portion of the former's operating rights and by Spencer Bros., Inc., (Spencer) to Stevens of all of Spencer's operating rights.

The facts may be summarized as follows: Separate proceedings were in-

---

1. Section 312(b) provides:

"Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe."

stituted at different times and, by separate orders, the Commission approved the acquisition by Stevens of a portion of the operations and a portion of the certificate of S. & C. and the business and certificate of Spencer. The separate orders were based on the transfer rules prescribed under Section 212(b). The plaintiffs contend that the two transactions should have been regarded as one transaction involving the acquisition by a person of control of two or more carriers within Section 5(2) of the Act (49 U.S.C.A. § 5 (2)),[2] and the Commission should have determined the transactions under Section 5(2).

On July 11, 1960, Stevens, a newly formed non-carrier corporation, holding no certificate of public convenience and necessity, and S. & C., a motor common carrier, filed a joint application with the Commission seeking authority under Section 212(b) for Stevens to purchase a portion of the operating rights of S. & C. The application was docketed and on September 30, 1960, the Transfer Board of the Commission issued an order denying the application, holding that the rights to be sold were not clearly distinguishable and severable from the remaining operating rights S. & C. would retain. Shortly thereafter the applicants jointly petitioned for reconsideration and for approval of the application subject to an agreed condition revoking that portion of the retained operating rights of the transferor, S. & C., upon consummation of the transaction, which duplicated those being transferred. On December 7, 1960, Division 4 of the Commission acting as an Appellate Division, granted applicants' petition for reconsideration, vacated and set aside the prior order of denial entered by the Transfer Board, and approved the transfer subject to a condition revoking that portion of the irregular route operating rights of the transferor, upon consummation of the transaction, which duplicated the regular route authority transferred. This order was duly published in the Federal Register on December 14, 1960, at page 12,851 and notification was given to the Commission that the transaction was consummated on February 1, 1961.

On October 19, 1960, Stevens and Spencer filed a joint application seeking authority under Section 212(b) of the Act, for Stevens to purchase all of the operating rights of Spencer. This application, docketed as No. MC–FC–63698, listed Stevens as a non-carrier and Spencer as a motor carrier owning two units of highway equipment. The Transfer Board approved the sale and transfer by Spencer to Stevens on February 24, 1961. Both applicants were found to be carriers owning less than 20 vehicles. This order was duly published in the Federal Register on March 3, 1961, at page 1890.

The plaintiffs filed petitions for waiver of Rule 1.101(e), (which required petitions for rehearing, etc., to be filed within 30 days from date of service of the order in question) and to vacate and set aside the orders authorizing the above transfers from S. & C. to Stevens and Spencer to Stevens, on the grounds that the rights transferred were dormant.

Stevens answered generally stating, (1) no waiver of the time requirement to file a petition for reconsideration was

---

2. Section 5(2) (a) provides:
  "It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—(i) for two or more carriers to consolidate or merge their properties or franchises, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; *or for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise;* or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise; * * *" (Emphasis supplied).

warranted, (2) that the transactions were already consummated, and (3) that the regular routes of S. & C. transferred were not dormant.

On March 21, 1961, a motion was filed to set aside the S. & C. and Spencer orders on the jurisdictional grounds that the two applications must be considered together under Section 5, because a non-carrier is attempting to purchase two motor carriers and the total number of vehicles involved exceed twenty.

Division 3 of the Commission, acting as an Appellate Division, on May 23, 1961, issued two separate orders, one in each case granting waiver of Rule 1.101(e), accepting the petitions and motions for filing, denying the petitions and overruling the motions to set aside the orders on jurisdictional grounds.

The present action was commenced and the court issued a temporary restraining order enjoining the defendants from issuing certificates of public convenience and necessity to Stevens.

The sole issue before the court is whether the Commission acted within the scope of its jurisdiction in approving the purchases under the Transfer Rules issued pursuant to Section 212(b) of the Act.

The plaintiffs contend that the proposed purchase by the non-carrier Stevens of a portion of the operating authority of S. & C. and thereafter, by a subsequently filed application, the proposed purchase by carrier Stevens of the operating authority of Spencer, both operating less than 20 vehicles, constitutes a single transaction requiring approval under Section 5 for the reason that any unification of S. & C. and Spencer would require approval under Section 5. Therefore, they argue, public policy requires that non-carrier Stevens' attempted purchase of the operating rights of these two carriers in separate transactions be found to constitute a subterfuge to avoid jurisdiction under Section 5.

Plaintiffs point out that the Commission approved the S. & C. transaction on December 7, 1960, with the consummation occurring on February 1, 1961, and the application to purchase Spencer was filed on October 19, 1960. Therefore, they maintain Stevens was a non-carrier purchasing Spencer, a carrier, and the status of the parties in both applications was the same from October 19, 1960, until February 1, 1961. They then conclude that a non-carrier corporation was attempting to purchase the operating authority of two motor carriers with both applications pending concurrently and this situation falls squarely within the statutory language of § 5(2).

The defendants, on the other hand, maintain the status of the parties as of the date of actual consummation is controlling in determining whether the provisions of § 5 are applicable. The Commission has so held, Davis-Purchase-Lambrecht, 66 M.C.C. 779; Baggett Transp. Co. Purchase-North Alabama M. Exp., Inc., 57 M.C.C. 690.

In determining whether the Commission acted within its authority in permitting the sales and transfers to Stevens, under § 212(b), rather than requiring its approval under § 5, we must examine the transactions in the light of the statutory language and the Congressional purpose. That purpose in the enactment of Section 5 was to facilitate mergers and consolidations in the national transportation system. The language of the statute expresses the clear desire of Congress that the transportation industry proceed toward an integrated system through substantial corporate simplification. County of Marin v. United States, 356 U.S. 412, 78 S.Ct. 880, 2 L.Ed. 2d 879.[3] And, the effect of § 5, making it lawful for two or more carriers to consolidate or merge their properties or franchises, etc., with the approval and authorization of the Commission, is to permit the lawful accomplishment of transactions which would otherwise be unlawful. Railway Labor Executives'

3. For a more detailed history of § 5, see St. Joe Paper Co. v. Atlantic Coast Line

R. Co., 347 U.S. 298, 74 S.Ct. 574, 98 L. Ed. 710.

Ass'n v. United States, 151 F.Supp. 108 (D.C.D.C.1957).

Section 5 provides for the merger or consolidation of the properties, franchises, etc., of any two or more carriers, for the purchase, lease, contract to operate the properties or acquiring control of any carrier or two or more carriers by any other carrier and for acquiring control through ownership of stock or otherwise of any two or more carriers by a non-carrier. Among other things, the Commission must approve and authorize the transaction before it may be accomplished, and the proposed transaction must be consistent with the public interest and conform to the standards therein specified.

However, not all transactions involving sales and transfers are subject to § 5. Section 5(10) provides that "Nothing in this section shall be construed to require the approval or authorization of the Commission in the case of a transaction within the scope of paragraph (2) of this section where the only parties to the transaction are motor carriers  *  *  * and where the aggregate number of motor vehicles owned, leased, controlled, or operated by such parties, for purposes of transportation  *  *  * does not exceed twenty."

Thus, Congress has provided a specific exemption from § 5 for these small carriers where the total number of vehicles involved does not exceed twenty. In those situations, a transfer of a certificate is governed by § 212(b) which reads as follows:

"Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe."

The rules and regulations prescribed by the Commission are found in 49 C.F.R. 179.

As stated by the Supreme Court in United States v. Resler, 313 U.S. 57, 59, 61 S.Ct. 820, 821, 85 L.Ed. 1185, 1186:

"The obvious sense of § 212(b) could hardly be expressed more aptly than in the language quoted. Section 213(e) [now § 5(10)] is equally explicit. Read together, the two sections can mean only that a transfer involving not more than twenty vehicles is governed by § 212(b) and the regulations enacted pursuant to it.  *  *  *"

The Commission set forth the distinction between § 5 and § 212(b) in Atwood's Transport Line-Lease-Clark, 52 M.C.C. 97, at page 107, as follows:

"The national transportation policy was not intended to eliminate the distinction between sections 5 and 212(b), as specifically set forth in those separate sections of the act. It was only necessary that the national transportation policy be kept in mind when the Commission prescribed the rules and regulations governing transfers of certificates and permits, its sole power under section 212(b). Section 5 is principally concerned with the bringing of two or more carriers under control or management in a common interest. For these small carriers desiring to effect the transfer of a certificate or permit from one to the other, a specific exemption was provided in section 5(10), and other transfers of a certificate from a carrier to a person, not a carrier and not affiliated with a carrier, are not subject to section 5. The intent of the Congress obviously was to provide a means whereby such transfers could be effected easily and without delay under such rules as the Commission deemed appropriate. As stated by the court in Stearn v. United States, supra, ([D.C.], 87 F. Supp. 596), it was 'the Congressional intent that operating rights' under section 212(b) 'might be freely transferred so long as the public interest was not harmed thereby.' "

It is a familiar rule of statutory construction that an administrative interpretation of a statute by the agency charged with its application and enforcement, though not controlling or binding

upon the courts, is entitled to great weight. County of Marin v. United States, 356 U.S. 412, 420, 78 S.Ct. 880, 2 L.Ed. 879, 885; Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124, 129; United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345, 1354; Mitchell v. Greinetz, 10 Cir., 235 F.2d 621.

■■ Applying the foregoing principles to the transactions involved in the case at bar, it is clear the transfer from S. & C. to Stevens was consummated on February 1, 1961, at which time Stevens was a non-carrier. Thus, the transfer was from a carrier to a non-carrier and, therefore, it was not subject to § 5.

The order approving the transfer from Spencer to Stevens was entered on February 24, 1961, and Stevens was found to be a carrier at that time. However, this transaction did not involve more than twenty vehicles and accordingly it was exempted from § 5 by the provisions of § 5(10).

As to plaintiff's contention that the two transfers constitute a single transaction, there is no evidence to support it. The record does not disclose that the two transferors, S. & C. and Spencer, knew of the other's proposed sale or were in any way connected or affiliated with each other or the transferee, Stevens. The contracts entered into between the parties providing for such transfers were separate and independent of each other and the applications for transfer were filed separately and at different times. The allegations presented by plaintiffs in an effort to show a scheme or interdependency between the two transactions were considered by the Commission and rejected. We cannot say the Commission erred in this respect.

We conclude the transactions here in question are not subject to § 5 and the Commission acted within its authority in permitting the transfers from S. & C. and Spencer to Stevens under § 212(b). The separate orders of the Commission

approving such transfers are therefore sustained. The temporary restraining order enjoining defendants from issuing certificates of public convenience and necessity to Stevens is dissolved.