**UNITED STATES of America,**
**Appellee,**

v.

**FLEMING'S EXPRESS, INC.,**
**Defendant-Appellant.**

**No. 74–1105.**

United States Court of Appeals,
First Circuit.

Argued Sept. 10, 1974.

Decided Dec. 26, 1974.

Robert G. Parks, Needham, Mass., for appellant.

J. F. Walker, I.C.C., with whom James N. Gabriel, U. S. Atty., and Wayne B. Hollingsworth, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, MOORE,* Senior Circuit Judge, and McENTEE, Circuit Judge.

MOORE, Senior Circuit Judge.

This is an appeal from a determination in the District Court of Massachusetts that Fleming's Express, Inc. (Fleming's)[1] is guilty of a misdemeanor under the Interstate Commerce Act, 49 U.S.C. Sections 5(4) and 10(1)[2], as a result of its

---

* Of the Second Circuit sitting by designation.

1. Fleming's Express, Inc. is a motor vehicle common carrier within the meaning of the Interstate Commerce Act, 49 U.S.C.

2. 49 U.S.C. Section 5(4) provides:

It shall be unlawful for any person, except as provided in paragraph (2) of this section, to enter into any transaction within the scope of subdivision (a) of paragraph (2) of this section, or to accomplish or effectuate, or to participate in accomplishing or effectuating, the control or management in a common interest of any two or more carriers, however such result is attained, whether directly or indirectly, by use of common directors, officers, or stockholders, a holding or investment company or companies, a voting trust or trusts, or in any other man-

ner whatsoever. It shall be unlawful to continue to maintain control or management accomplished or effectuated after the enactment of this amendatory paragraph and in violation of its provisions. As used in this paragraph and paragraph (5) of this section, the words "control or management" shall be construed to include the power to exercise control or management.
49 U.S.C. Section 10(1) provides:

Any common carrier subject to the provisions of this chapter, or, whenever such common carrier is a corporation, any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by such corporation, who, alone or with any other corporation, company, person, or party, shall willfully do or cause to be done, or shall willingly suffer

acquisition of Shipper's Service, Inc. (Shipper's)[3] without appropriate approval from the Interstate Commerce Commission (ICC).

The facts, according to stipulation of the parties, are straightforward and lead to an apparent conflict between Section 5(4) as it has been interpreted since 1933 and Section 5(10) as amended in 1966. Two common carriers, Fleming's and Shipper's, agreed to merge through sale of all of Shipper's stock to Fleming's. The purchase and sale agreement was entered into on December 8, 1970 and a check representing part payment for the stock, dated December 5, 1970 was presented by Fleming's to Shipper's. The parties agree that until December 29, 1970, the "closing date" of the transaction, Fleming's did not exercise the control or management prohibited by Section 5(4), nor did it have the power to exercise such control. Fleming's and Shipper's did not seek the ICC approval provided in Section 5(2) of the Act, 49 U.S.C. Section 5(2), but considering themselves exempt pursuant to Section 5(10), they consummated the stock transfer without such approval.

Shipper's had been affiliated with Acme Transfer and Storage Co., Inc. (Acme) at least from June 29, 1969 to December 16, 1970. On December 16, 1970, Acme voluntarily gave up its authority to act as an Interstate Motor Common Carrier.

Neither Fleming's nor Shipper's revenues alone or combined with each other exceeded $300,000. for the statutory period. However, when the revenues of Shipper's include revenues of its affiliate Acme for any of the twelve-month consecutive periods ending six months prior to December 5, December 8, December 16 or December 29, the amount exceeds $300,000.

In March, 1973, the government obtained a two count information charging Fleming's with violation of 49 U.S.C. Sections 5(4) and 10(1) by agreeing on December 8 to consolidate on December 29, 1970 without ICC approval and authorization and by wilfully continuing to control and manage two motor vehicle common carriers without ICC approval and authorization until March 19, 1973.

The government and Fleming's agree that the issue of Fleming's guilt turns on whether or not Acme's revenues are to be counted in ascertaining the revenues of Shipper's for purposes of the Section 5(10) exception. This turns on whether Acme was affiliated with Shipper's at the relevant time.

The sections of the Interstate Commerce Act in question in this litigation allow certain motor common carriers to merge only with ICC approval. Section 5(10) exempts small carriers from Section 5(2) ICC approval process. Originally, the exception exempted carriers which had less than 20 motor vehicles, including vehicles owned by affiliates and vehicles leased or operated by a carrier or affiliate. In 1965 Congress abandoned the vehicle measure and opted for a more reliable gross revenue measure:

> . . . where the aggregate gross operating revenues of such carriers have not exceeded $300,000. for a period of twelve consecutive months ending not more than six months preceding the date of the agreement of the parties covering the transaction. 49 U.S.C. Section 5(10).

or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or who shall aid or abet therein, or shall willfully omit or fail to do any act, matter, or thing in this chapter required to be done, or shall cause or willingly suffer or permit any act, matter, or thing so directed or required by this chapter to be done not to be so done, or shall aid or abet any such omission or failure, or shall be guilty of any infraction of this chapter for which no penalty is otherwise provided, or who shall aid or abet therein, shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof in any district court of the United States within the jurisdiction of which such offense was committed, be subject to a fine of not to exceed $5,000 for each offense . . . .

3. Shipper's Service, Inc. is a corporation which is a motor vehicle common carrier within the meaning of the Interstate Commerce Act, 49 U.S.C.

Prior to 1965, case law indicated that the words "enter into any transaction" in Section 5(4), triggering the criminal liability, referred to the date of consummation of the merger or control agreements, in other words, the "closing date." In determining which vehicles to count to ascertain whether or not the old Section 5(10) exemption applied, the closing date was also used. For example, if the carrier had an affiliate on the closing date, the vehicles owned by the affiliate were counted for Section 5(10) purposes.

When Congress amended the exemption provision in 1965 to use a gross revenue measure, the current statutory language was enacted providing a time period during which the gross revenue would be measured—12 consecutive months ending not more than six months preceding the *date of the agreement* of the parties covering the transaction.

The district court ruled that the proper method of computation of Shipper's revenue was to ascertain the aggregate amount for Shipper's and Acme for the specific twelve month period ending six months prior to December 8, 1970, the date on which the consolidation agreement between Fleming's and Shipper's was entered into.

Appellants argue that the December 29th date, the date of consummation, otherwise called the "closing date" should be used to determine affiliates of Shipper's, and that Acme, having ceased to be a carrier as of December 16, 1970, would no longer be an affiliate; hence, its revenues for the eighteen-month period should not be counted as those of Shipper's even though the two companies were affiliated at this earlier time. Appellant's argument rests heavily on the pre-1965 legislation and its interpretation.

Prior to the 1965 amendment the determination of whether or not a company qualified for the exemption, was made through a vehicle count and the date of consummation was used to determine affiliation. The pre-1965 vehicle count provision did not include any indication of Congressional intent as to when the vehicle count would be done. However, the courts and the ICC uniformly used the date of consummation to maintain consistency with the application of the criminal sanction for "transactions" violating the approval and authorization procedure. Transactions cognizable under the criminal provision were uniformly deemed to be those which gave control of one carrier to another carrier in the absence of ICC approval and authorization. An agreement which envisioned a transfer of control in the future was not considered such a transaction.

A recent ICC case which used the date of consummation with the new revenue measure provision may clarify the policy of the Commission and also suggests a logical and desirable application of the provisions of the two types of approval and authorization procedure. Cargo Express, Inc., Transferee, and Ohio Fast Freight, Inc., Transferor, 116 M.C.C. 387 (1973) involved an application by Cargo Express, a non-carrier, pursuant to Section 312 to acquire a part of Fast Freight, a carrier. Almost a year after the agreement between Cargo and Fast Freight had been signed but prior to consummation, Cargo acquired another carrier, Raub. Cargo argued that Section 5 with its more complicated application procedure did not apply because Cargo only became a carrier by virtue of the acquisition of the carrier, Raub, and hence, it was not subject to Section 5 on the "date of agreement" between Cargo and Fast Freight which occurred almost a year before Cargo acquired Raub. The Commission found that: "It has long been the view of the Commission that the status of the parties as of the date of actual consummation is controlling in determining whether the provisions of section 212(b) or section 5 are applicable." 116 M.C.C. at 392. *See also* Davis —Purchase—Lambrecht, 66 M.C.C. 779 (1965); Ship-By-Truck Co., Inc. v. United States, 208 F.Supp. 847, 850 (D.Kansas 1962), aff'd per curiam, 373 U.S. 376, 83 S.Ct. 1312, 10 L.Ed.2d 420 (1963).

Commission policy, in accord with Congressional intent in providing two levels of scrutiny for acquisition of control, has been to determine the status of parties, carrier—non-carrier and large or small ($300,000. plus or minus) on the date of actual consummation[4], the date when the control and consolidation of economic power in the transportation industry becomes a reality. To do otherwise imposes an unnecessary burden on the agency as well as subjecting the applicants to arbitrary and inconsistent results when Congress clearly intended that smaller carriers be exempt from complex proceedings under Section 5.

The lower court decision in this case recognizes the necessity of viewing the provisions of Section 5 as a whole. Judge Caffrey in ruling that the date of agreement controlled the determination of affiliation for Section 5(10) purposes specifically relied on the language *"entering* into any transaction" in Section 5(4). We find that this reliance was misplaced inasmuch as the Section 5(4) language has remained unchanged since 1933 and the courts and the Commission have consistently construed the phrase "entering into any transaction" to refer to consummation.

The statutory scheme of Section 5 focuses on the actual direct or indirect control of one carrier by another carrier where one of them is of a certain size as determined by revenue. In this case there is a stipulation that control was not exercised until after the closing. It follows that an interpretation of Section 5(10) using the "closing date" to determine which revenues are to be counted will serve to achieve the necessary scrutiny while exempting the group of transactions which Congress has set apart. For when the Fleming's—Acme affiliation terminated, Fleming's was no longer of the size triggering Section 5.

While the 1965 amendment did substitute an income measure for the vehicle measure of the Section 5(10) exemption, the overall scheme of the Section 5 scrutiny of consolidation agreements between more powerful carriers remains the same; thus a consistent and equitable interpretation for carrying out Congressional intent requires a reversal of the criminal conviction of Fleming's Express.

---

4. It is important to note, however, that the date of actual consummation has not been determined solely by the actual transfer of legal title but rather the inquiry focuses on the actual or potential indirect or direct control of one carrier by another:

> Section 5 is primarily concerned with the transfer of possession or control of operations, and, in determining its applicability, the status of the parties and operations when such transfer is effected is controlling . . . For such purposes, it is immaterial whether transferee obtains legal or equitable title when the transfer is effected.

After delivery of the properties to vendee and the assumption of operations by it . . . the sale was completely consummated, except for payment of the purchase price. On that date, the parties clearly intended the transaction as a purchase regardless of its form. Execution of a bill of sale would merely serve as evidence of what had already been accomplished. ABC Truck Lines, Inc.—Purchase—D. D. Maner, 38 M.C.C. 507, 510–11 (1942), *citing* Greyhound Mergers, 1 M.C.C. 342, 351–52 (1936).