**CAMPBELL SIXTY–SIX EXPRESS, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**
and
**Roadway Express, Inc., Intervenor-Defendant.**

**No. 2190.**

United States District Court
W. D. Missouri, S. D.

Aug. 29, 1966.

See also D.C., 253 F.Supp. 613.

W. C. Dannevik, Jr., Kansas City, Mo., for Campbell Sixty-Six Express, Inc.

R. J. Reynolds, Jr., R. J. Reynolds, III, of Reynolds & Reynolds, Atlanta, Ga., for Dixie Highway Express, Inc.

James W. Wrape, Robert E. Joyner, of Wrape & Hernly, Memphis, Tenn., and Washington, D. C., for Gordon's Transports, Inc.

Frank M. Garrison, Lubbock, Tex., W. D. Benson, Jr., Lubbock, Tex., for T.I.M.E. Freight, Inc.

F. Russell Millin, U. S. Atty., Western Dist. of Mo., Kansas City, Mo., for the United States of America.

Robert W. Ginnane, General Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Frank W. Taylor, Jr., of Reeder, Griffin & Dysart, Kansas City, Mo., Russell R. Sage, of Turney, Major, Markham & Sherfy, Washington, D. C., for intervening defendant Roadway Express, Inc.

Before GIBSON, Circuit Judge, and HUNTER and COLLINSON, District Judges.

## MEMORANDUM AND ORDER

COLLINSON, District Judge.

The plaintiffs, four duly certificated common carriers of freight by motor, bring this action to set aside and enjoin an order of the defendant Interstate Commerce Commission. The order grants an "alternate route" to the intervening defendant, Roadway Express, Inc., between St. Louis, Missouri and Nashville, Tennessee.

Roadway Express, Inc., is also a holder of a certificate of convenience and necessity as a common carrier of freight by motor vehicles. It operates over a vast complex of regular routes, but this case involves the movement of traffic between St. Louis, Kansas City and Springfield, Missouri, and Decatur, Illinois, the so-called Midwest area, and Atlanta, Georgia, and various other points in Georgia, Alabama and Tennessee in the so-called Southeast area. Roadway's present operation is to funnel all its freight originating in the Midwest area into St. Louis (referred to as a break-bulk point), consolidate and forward it on through-trucks to Atlanta (the other break-bulk point). There the freight is divided up among other units for its ultimate destination in the Southeast area. This operation is conducted in an identical manner in reverse direction. At the present time the through-trucks, so-called because they serve no intermediate points, travel a route from St. Louis to Louisville, Kentucky, then to Nashville, Tennessee, and on down through Chattanooga to Atlanta. The alternate route applied for is from St. Louis directly to Nashville, eliminating the round-about route through Louisville. The proposed route is 122 miles shorter and would save four hours running time between St. Louis and Atlanta. Obviously, it would

result in considerable financial savings to the intervenor.

Without going into detail, the four plaintiff-carriers also collect freight in the Midwest area and transport it to points in Georgia and Alabama, and likewise from towns in that area back to the Midwest. Some of this freight moves over the exact route which the intervenor now seeks, but other freight moves through Springfield, Memphis and Birmingham to Atlanta.

The evidence was heard by an examiner of the Interstate Commerce Commission, who wrote a lengthy report and recommended an order denying the issuance of a certificate of convenience and necessity to the intervenor for the proposed alternate route. The intervenor filed exceptions to this recommended order and, upon review, Division One of the Commission arrived at a different conclusion and filed a report granting issuance of a certificate to the intervenor for the alternate route. It is this order which plaintiffs seek to set aside.

There are no material factual issues in this case. The report of the Commission states "The statement of facts in the report of the Examiner is accurate in all material respects and, except as herein modified, is adopted as our own." The parties themselves raise no question as to the accuracy of these findings of the Examiner which the Commission adopted.

■ All of the parties agree that the Examiner and the Commission applied the proper rule of three concurrent tests which must be met for the granting of an alternate route. These tests are: (1) Applicant must presently operate between the termini involved under appropriate authority over a practicable and feasible route; (2) applicant must be in actual competition with the present carriers between the affected points, transporting a substantial amount of traffic over such route; and (3) the competitive situation must remain relatively unchanged if the authority sought is granted. Applying this three-fold test to the undisputed facts, the Examiner found that the applicant failed on all three grounds; but the Commission found, on the other hand, from the same facts, that the applicant had passed all three tests with flying colors. Plaintiffs argue that this ultimate conclusion by the Commission is arbitrary and capricious, not based on any supporting findings of fact, and that the basis and grounds for this ultimate conclusion can only be supported by conjecture and inference.

■ The scope of this Court's review of the disputed order has been well defined in many cases. In United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946) the Court said:

> The function of the reviewing court is * * * limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, * * * for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law.

It is also well established that in determining whether certificates of convenience and necessity shall issue the—

> Commission has been entrusted with a wide range of discretionary authority. (Citing cases) Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies. United States v. Detroit & Cleveland Navigation Company, 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945)

It is also equally well established in the cases, however, that—

> [J]udicial deference to expertise is not boundless; and expertise is not sufficient in itself to sustain a decision. The order must be supported by substantial evidence and must be made within the statutory limits placed on the Commission's powers by Congress.
>
> \*　\*　\*　\*　\*　\*
>
> As to the sufficiency of evidence to support the order, it is not the proper function of the court to substitute its judgment or to weigh evidence in place of the Commission. On the other hand, the court must review the record without a rubber stamp approach. Eastern Central Motor Carriers Association v. United States, 239 F.Supp. 591 (1965) (D.C.D.C.).

 Taking up now the actual issues raised by the parties, the plaintiffs contend, and the Examiner found, that the intervenor is not presently operating between the termini involved under appropriate authority over a practicable and feasible route. Although there is no question that the intervenor is actually hauling a considerable volume of freight between St. Louis and Atlanta by way of Louisville and Nashville, the Examiner found that this operation was actually without any legal authority. Intervenors claim that operating rights they have for an east and west route through Louisville and for a north and south route through Louisville can be combined so that freight moving east from St. Louis can then be hauled from Louisville directly south to Nashville. Without going into the technicalities of "tacking" and "service points," this contention is based upon the fact that the intervenor's certificate of convenience and necessity for the north and south route includes the right to operate also over any combination of "the above described or *otherwise authorized* routes, regardless of whether the routes join at a common point of service." The sole question is the interpretation to be given the phrase "otherwise authorized routes." The Examiner held that the word "au-

thorized" being in the past tense, this phrase only authorized such combinations with routes then authorized at the time the certificate was issued; the Commission on the other hand held that the phrase had a prospective application and applied to routes thereafter acquired by the carrier. The Commission further stated, and illustrated by example, that if the Commission wishes to restrict such authorization of such combinations that it use the phrase "or otherwise *presently* authorized routes." This Court feels that it is bound by the Commission's interpretation of its own certificate of convenience and necessity when that interpretation does no violence to the principles of logic and common sense.

 Under the Commission's holding in this case the second test which the intervenor must pass is that "applicant must be in actual competition with the present carriers between the affected points, transporting a substantial amount of traffic over such route." The Commission reached the conclusion that the lengthy evidence introduced on this point supported the applicant, Roadway. The Examiner, in a lengthy analysis of this evidence, arrived at exactly the opposite conclusion. This difference in results from undisputed evidence can be attributed directly to opposing interpretations of the meaning of the words "affected points."

The Commission seems to feel that this term referred to St. Louis and Atlanta, only. In the Commission's report it was pointed out that Roadway transports approximately 39,000,000 pounds of freight, on an annual basis, between its Atlanta and St. Louis break-bulk point "which is comparable to the tonnage being handled by protestants over routes which approximate the protestants' routes."

The Examiner, on the other hand, analyzed the lengthy evidence on this subject on the basis that "affected points" meant those cities, towns and terminals now being served by the plaintiffs in the Midwest area and in the Southeast area. He found that the freight which applicant has been handling between Atlanta and

St. Louis is largely "overhead" freight, which is freight originating at or destined to points beyond the points served by plaintiffs in the two areas. The Examiner said that the overhead freight must be considered, "but by the same token so must the local traffic." Local traffic is traffic, as we understand it, from the cities and towns authorized to be served by the truckers in each area destined for authorized cities and towns in the other area. Furthermore, the Examiner pointed out that much of this local traffic now being handled by the plaintiffs does not travel between St. Louis and Atlanta at all. For example, two of the plaintiffs transport their freight from Kansas City to Birmingham, Alabama, by way of Springfield and Memphis. Similarly, these carriers transport freight originating in St. Louis through Memphis into Alabama and Georgia. Therefore, in applying the test of "transporting a substantial amount of traffic," all the traffic between the "affected points" must be taken into consideration. But the salient point is that the gross tonnage which Roadway now transports between its terminals in Atlanta and St. Louis is no measure of its "actual competition" with these plaintiffs in the transportation of freight between authorized service points of the plaintiffs in each of these areas. The Examiner set out this evidence in detail and came to the conclusion that the intervenor "could be considered to be in effective competition only with respect to Greenville, Columbia and Savannah. Relatively few shipments have been transported from and to the other Southeastern points, especially when compared with the substantially greater volume of traffic handled by the protesting carriers."

As pointed out above, the Commission adopted all of the Examiner's findings of fact "except as herein modified." Without modifying the Examiner's findings of fact in respect to local freight, in any way, the Commission simply concluded that the annual tonnage of approximately 39,000,000 pounds constitutes "traffic which is comparable to the tonnage being handled by protestants." This Court can not determine any basis for this conclusion of the Commission. Certainly the term "effective competition" must have an economic meaning. These carriers are all in business for a profit, and there is no competition among them to see which carrier carries the most freight or has the most trucks on the road except as to that freight travelling between two points which each carrier is authorized to serve. The "overhead freight" between St. Louis and Atlanta which originates and terminates beyond those areas plaintiffs serve is certainly not competitive with plaintiffs. It is quite obvious from the figures set out in the Examiner's report that the total freight now being handled by intervenor between Kansas City, Springfield and St. Louis, Missouri, and the plaintiffs' Alabama and Georgia terminals, in both directions, is very small as compared with the total tonnage of each of the plaintiffs between these points.

Without going into the minute details and comparisons made by the Examiner, we will cite one example. Gordon Transport's, Inc., serves four cities in Alabama and Georgia. In a given four-week period it transported 5,309 shipments totalling 5,051,000 pounds between St. Louis and Kansas City and those points. In the same period Roadway transported 171 shipments totalling only 238,258 pounds from and to those points.

We are fully aware that the test of present "effective competition" is one devised by the Commission itself (and it seems most equitable to us) and that the Commission, not being bound by the rule of stare decisis, can abolish this test as a prerequisite to issuing its certificate of convenience and necessity for an alternate route. But in its report the Commission stated it was following this test. However, it made no findings of fact in its report which can in any way justify its conclusion that the test has been met by the intervenor. Instead, it specifically adopted the findings of fact of the

Examiner, which findings of fact incontrovertibly demonstrate to this Court that the applicant is not now effectively competing with these plaintiffs.

In Eastern Central Motor Carriers Ass'n v. United States, 239 F.Supp. 591 (D.C.D.C.1965) the court points out that in this type of procedure—

[A]n order of the Interstate Commerce Commission may be invalidated if it is either "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law \* \* \* (5) unsupported by substantial evidence."

The above case further holds that the terms "arbitrary" and "capricious" mean "without rational basis." Applying these principles to the facts of this case, we have a situation where facts as found by the Examiner and adopted by the Commission simply do not supply any rational basis for a conclusion that the intervenor is now "actually" in competition with these plaintiffs.

In the case of Nashua Motor Exp., Inc. v. United States, 230 F.Supp. 646 (D.C. N.H.1964) the court said:

[T]his court is bound to inquire into every aspect of the proceedings below wherein it may appear that the Commission has otherwise applied an erroneous standard of law, or has made arbitrary findings, or has reached ultimate conclusions without adequate subordinate findings, or has failed in any other way to observe those procedures of investigation and elaboration which have become the hallmarks of proper administrative determination.

We find that the "ultimate conclusion" reached by the Commission on the test of actual competition is not based on any "adequate subordinate findings" and is therefore, in the legal sense, "arbitrary and capricious."

In view of the above conclusion, it is unnecessary to discuss the third test, in which, again, the conclusion of the Commission and the conclusion of the Examiner were diametrically opposed on sim-

ilarly uncontradicted facts. It is therefore

Ordered, adjudged and decreed that the order of the Interstate Commerce Commission issued in docket No. MC2202 (Sub-No. 249), styled Roadway Express, Inc., Extension-Alternate Route Nashville-St. Louis, be, and is hereby, set aside and declared to be void.