UNITED STATES *v.* RESLER, DOING BUSINESS AS RESLER TRUCK LINE AND AS BRADY TRUCK LINE.

No. 616. Argued March 14, 1941.—Decided April 14, 1941.

*Mr. Fowler Hamilton,* with whom Solicitor General *Biddle,* Assistant Attorney General *Arnold,* and *Messrs. James C. Wilson* and *S. R. Brittingham, Jr.* were on the brief, for the United States.

*Mr. Harry S. Silverstein* submitted for appellee.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This appeal presents two important questions affecting the administration of the Motor Carrier Act of 1935 (49 Stat. 543). The first is whether § 213 (e) places beyond reach of § 212 (b) transfers of operating rights where not more than twenty vehicles are involved. The second is whether the Interstate Commerce Commission possessed statutory authority to rule that assent of the Commission is a condition precedent to an effective transfer which is subject to § 212 (b).

In July, 1940, the United States filed an information against appellee charging that he had engaged in interstate motor carrier operations over a specified route in Colorado without a certificate of public convenience and necessity required by § 206 (a) of the Motor Carrier Act of 1935. Appellee filed a special plea in bar alleging in substance that he had not violated § 206 (a) because he had acquired the requisite certificate from one Brady to whom it had been issued originally, and that the approval of the Interstate Commerce Commission was not necessary to validate that transfer. The District Court sustained this plea, and the United States appealed directly to this court, 34 Stat. 1246, 18 U. S. C. § 682. Counsel for appellant and appellee have stipulated that not more than twenty vehicles were involved in the transfer from

Brady to appellee, and that the Interstate Commerce Commission has not approved that transfer.

The transfer is governed by § 212 (b). That section provides: "Except as provided in section 213, any certificate or permit may be transferred pursuant to such rules and regulations as the [Interstate Commerce] Commission may prescribe." Section 213, regulating consolidations, mergers, and other acquisitions of control of motor carriers, provides in subsection (e) that ". . . the provisions of this section requiring authority from the Commission for consolidation, merger, purchase, lease, operating contract, or acquisition of control shall not apply where the total number of motor vehicles involved is not more than twenty."

The obvious sense of § 212 (b) could hardly be expressed more aptly than in the language quoted. Section 213 (e) is equally explicit. Read together, the two sections can mean only that a transfer involving not more than twenty vehicles is governed by § 212 (b) and the regulations enacted pursuant to it. The phrase "Except as provided in § 213" was intended to remove from the sweep of § 212 (b) only those transfers which were within the compass of § 213. It was never intended to place beyond reach of § 212 (b) the transfers which § 213 (e) expressly placed beyond reach of § 213.

Notwithstanding the fact that the instant transfer is subject to § 212 (b), appellee challenges the Commission's authority to enact Rule 1 (d) which provides: "No attempted transfer of any operating right shall be effective except upon full compliance with these rules and regulations and until after the Interstate Commerce Commission has approved such transfer as herein provided. . . ." Order of July 1, 1938, 3 Fed. Reg. 2157.

Power to make rules regulating the transfers embraced in § 212 (b) derives from the phrase in that section "pursuant to such rules and regulations as the Commission

may prescribe," and from § 204 (a) (6) which makes it the duty of the Commission to administer, execute, and enforce all provisions of [the Motor Carrier Act], to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration. . . ." Undoubtedly the power to prescribe regulations is not unlimited, but neither section provides or implies that the Commission is without authority to rule that parties to a proposed transfer which is governed by § 212 (b) must first obtain the consent of the Commission. Indeed, the conclusion is inescapable that such a rule is clearly within the regulatory power which Congress intended to confer on the Commission, for Congress could insure effective enforcement of other sections of the Act only by granting the Commission power to enact regulations broad enough to authorize Rule 1 (d).

Sections 213 (a) and 213 (b) carefully provide in detail for the regulation of transfers of operating rights by merger, consolidation, or by other specified means. Section 213 (a) (1) expressly stipulates that the approval of the Commission must precede a transfer which is subject to § 213. Manifestly, the administration of §§ 213 (a) and 213 (b) would be seriously hampered if the Commission were powerless to make the same requirement with respect to transfers subject to § 212 (b), particularly since the number of vehicles involved may determine which section is applicable.

In many respects a transferee such as appellee stands in the same relation to the Commission as an original applicant for permission to operate. Many inquiries which are relevant to the initial application are equally relevant to the proposed transfer. Section 206 (a), with immaterial exceptions, permits common carriers by motor vehicles to operate only if the carrier has first obtained a certificate of public convenience and necessity. Section 207 (a) expressly conditions issuance of the cer-

tificate on findings by the Commission that the applicant is "fit, willing, and able properly to perform the service proposed and to conform to the provisions of [the Motor Carrier Act] and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity." Plainly the finding of the requisite fitness, willingness, and ability of the first applicant is wholly inapplicable to his proposed transferee (see Rule 2 (c), 3 Fed. Reg. 2158), and the operations inceptively authorized no longer may serve public convenience and necessity because conditions have changed. See Rule 6, 3 Fed. Reg. 2158; compare §§ 208 (a), 212 (a). It is evident that full enforcement of §§ 206 (a) and 207 (a) likewise would be impeded if the Commission lacked power to rule that its consent must precede a transfer subject to § 212 (b).[1]

We conclude that the Commission acted within its authority to prescribe rules and regulations to implement § 212 (b) in ruling that its consent was a condition precedent to an effective transfer governed by that section. It was not compelled to contest the legality or propriety of such a transfer after it had been completed.

The judgment of the District Court is reversed and the cause is remanded for further proceedings.

*Reversed.*

---

[1] Absent such power, the Commission would encounter similar difficulties in the administration of other sections. Section 215 requires the Commission to withhold a certificate until the carrier has complied with Commission regulations exacting security for damage to persons and property. Section 217 compels specified carriers to file tariff schedules. Section 221 obligates motor carriers to file written designations of agents for service of process and Commission orders.

See also §§ 220, 223.