**CHEMICAL LEAMAN TANK LINES, INC., et al.**

**v.**

**UNITED STATES of America et al., and**

**Roy Bros., Inc., Intervenor.**

**Civ. A. No. 37368.**

United States District Court
E. D. Pennsylvania.

Nov. 12, 1965.

Ronald N. Corbert, Washington, D. C., Edwin H. Van Deusen, Dowington, Pa., for plaintiff.

James C. Lightfoot, Asst. U. S. Atty., Philadelphia, Pa., Raymond M. Zimmet, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

S. Harrison Kahn, Washington, D. C., Robert L. Kendall, Jr., Philadelphia, Pa., for intervenor, Roy Bros. Inc.

Before HASTIE, Circuit Judge, and WOOD and DAVIS, District Judges.

DAVIS, District Judge.

The plaintiffs bring this action before a statutory three-judge court pursuant to 28 U.S.C. §§ 1336, 2284, 2321–2323, and 2325 to set aside, vacate, and annul Order No. MC–FC 65847 of the Interstate Commerce Commission and to enjoin the Commission from enforcing the Order.[1]

In April 1963, Roy Brothers, Inc. and Bianchi Motor Transportation, Inc. both motor carriers, filed with the Interstate Commerce Commission an application for approval of a transfer of a portion of Bianchi's motor operating rights to Roy Brothers. The application was filed under the provisions of § 212(b) of the Interstate Commerce Act, 49 U.S.C. § 312(b) and the rules and regulations of the Commission pursuant thereto. In 1963, the Transfer Board, to which the Commission had referred the matter, entered an order authorizing the transfer of the operating rights

---

1. The issue of standing was not argued but for the purposes of this Opinion, the Court will assume, without deciding, that standing existed.

in question. It also found that the transfer came within § 212 of the Interstate Commerce Act and the rules and regulations pursuant thereto and was not subject to the more difficult and complicated provisions of § 5 of the Act, 49 U.S.C. § 5.[2] After the Board's Order was published in the Federal Register, 28 Fed.Reg. 7541 (1963), the plaintiff motor carriers filed timely petitions for reconsideration of the Order and requested a hearing before the Board. The plaintiffs' petition raised two points. First it questioned the computation of the number of vehicles that the transferor and transferee declared that they were operating in interstate commerce. The applicants had claimed less than twenty vehicles between them while the plaintiffs asserted that the transferee's Annual Report filed with the Commission showed twenty-six for the transferee alone and consequently that the transfer should have been governed by the more stringent § 5 which is the pertinent provision where the aggregate number of vehicles of both applicants exceeds twenty. Secondly, the petition alleged that the transferor had not engaged in the transportation of chemicals in bulk and that under the rules and regulations of the Commission such dormant authority could not be transferred. The request for oral hearing did not contain any affidavits or state the existence of any knowledge to support the plaintiff's allegations. In fact, all that the plaintiffs presented in support of their petition was the 1962 Annual Report of the transferee which listed twenty-six vehicles.

Pursuant to § 17(8) of the Interstate Commerce Act, 49 U.S.C. § 17(8), the Commission in August 1963 stayed the Order of the Transfer Board pending disposition of the petitions for reconsideration. The applicants thereupon filed a joint reply to the petitions with affidavits signed respectively by the presidents of the transferor and transferee companies. While both presidents acknowledged errors in their original computation, they made the corrections and certified the new computation which was still below twenty vehicles. They explained that the transferee's annual report in no way contradicted the affidavit and transfer application since the Annual Report listed the company's total number of units while those units used exclusively in intrastate are not counted for jurisdictional purposes under § 212(b) of the Act. On the issue of dormancy, the transferor's president submitted his company's records showing a frequent and diversified transportation in the movement of chemicals in the area sought to be acquired by the transferee, as well as his company's Certificate of Public Convenience and Necessity authorizing it to transport chemicals without restriction.

On October 31, 1963, the Commission denied the petitions for reconsideration and gave effect to the Order of the Transfer Board, stating:

"* * * the petitions set forth no facts or arguments which were not previously considered or which would establish that the transaction is subject to Section 5 of the Interstate Commerce Act; or that the transfer was not properly approved under the Rules and Regulations Governing Transfers of Rights to operate as a Motor Carrier in Interstate or Foreign Commerce * * *; and that a hearing is not

---

2. 49 U.S.C. § 5(2) (Interstate Commerce Act, § 5(2). It shall be lawful, with the approval and authorization of the Commission * * * (i) * * * for any carrier, or two or more carriers jointly, to purchase * * * the properties, or any part thereof, of another * * *. 49 U.S.C. § 5(10) (Interstate Commerce Act, § 5(10) Nothing in this section shall be construed to require the approval or authorization of the Commission in the case of a transaction within the scope of paragraph (2) where the only parties to the transaction are motor carriers subject to part II * * *, and where the aggregate number of motor vehicles owned, leased, controlled, or operated by such parties, for purposes of transportation subject to part II, does not exceed twenty.

necessary to a determination of the matter."

Plaintiffs then filed with the Commission petitions seeking a determination that an issue of general transportation importance was involved. In February 1964, the Commission rejected these petitions. Subsequently, the plaintiffs instituted the present action to review the Commission's Order which denied the plaintiffs' petition for reconsideration and request for a hearing.

## I.

The first question presented to the court is whether the Interstate Commerce Commission acted within the scope of its authority in finding that the transfer application was subject to § 212(b) of the Interstate Commerce Act and not § 5 of the Act without holding the requested hearing.

The purpose of Congress in carving out an exemption under § 5(10) of the Act was to permit the transfer of operating rights between small motor carriers as expeditiously as possible without the delay and lengthy administrative procedures involved under § 5. As explained by Senator Wheeler, the sponsor of the 1935 Motor Carrier Act:

" * * * we eliminate from this provision [§ 5] such a case, for example, as that of two small operators who might want to get together, and we made it apply only to cases where they had more than 20 vehicles, so that the *small operators could get together without the necessity* of going throught a great deal of red tape with the Commission".[3]

The Supreme Court in United States v. Resler, 313 U.S. 57, 59, 61 S.Ct. 820, 821, 85 L.Ed. 1185 (1941) declared:

"Read together, the two sections [§ 5(10) and § 212(b)] can mean only that a transfer involving not more than twenty vehicles is govern-

ed by § 212(b) and the regulations pursuant to it. * * *"[4]

Section 212(b) of the Interstate Commerce Act provides:

"Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe".

Under the rules and regulations of the Commission prescribed under that section, no hearing is required on the initial application, and it may be approved *ex parte*. Once the order of approval has issued and been published any interested party may file a timely petition for reconsideration together with a request for a hearing. Under 49 C.F.R. § 1.225, the request for a hearing must be accompanied with an explanation as to why "the evidence sought to be presented cannot reasonably be submitted in affidavit form". The plaintiffs in this case submitted no explanation and produced no affidavits that the aggregate number of vehicles used in interstate commerce by the transferor and transferee exceeded twenty. In fact all that the plaintiff presented was the transferee's Annual Report which listed its total number of vehicles without a breakdown showing those used in intrastate commerce and those used in interstate commerce. This dichotomy is critical for those used in interstate commerce are alone counted for jurisdictional purposes under § 212(b). Hagerstown Motor Express Co. Inc., Transferee and James R. Hahn, Transferor, 87 M.C.C. 473 (1960). It is clear that under the circumstances the plaintiff was certainly not entitled to a hearing. If the Commission were required to hold a hearing wherever any interested party alleged that more than twenty vehicles were involved and that the application should be decided under § 5, the intent of Congress in permitting expeditious transfers for small carriers would be seriously if not completely undermined.

---

3. 79 Cong.Rec. 5655 (1935) (Emphasis added)

4. See also Atwood's Transport Line-Lease-John A. Clarke, 52 M.C.C. 97, 107 (1950).

This issue now before this Court closely parallels that faced in Brooks Transportation Company et al. v. United States of America, Civil No. 2431, E.D. Va., May 13, 1957 where the Commission had granted an Order permitting the transfer of the operating rights under § 212(b). The Order was effective immediately and the plaintiffs, competing carriers of the applicants, sued to vacate the interim effect of the Order. They contended that the Order violated the Interstate Commerce Act and the Commission regulations since the Commission failed to give other motor carriers notice of the initial proceedings, an opportunity to be heard, and a stay of the Order pending review. The court stated that the lengthy procedural steps outlined under § 5 do not apply to § 212(b). It further asserted:

> "With only twenty vehicles or less at stake, however, the Congress evidently thought the public concern to be too slight to demand the close scrutiny of a full-dress inquiry. For these cases an ex parte application, under the supervision of the Commission, was deemed adequate. This construction of the Act is underpinned by its legislative history and is confirmed by the practice of the Commission for more than a score of years."

The plaintiff also relies on § 5 of the Administrative Procedure Act, 5 U.S.C. § 1004 which requires a hearing "[i]n every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing * * *." In Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L. Ed. 616 (1950), the Supreme Court discussed extensively the history and interpretation of that section. There, a native of China had been arrested by immigration officials for having overstayed his leave in the United States, and after a hearing before an immigrant inspector, the latter recommended that Wong Yang Sung be deported. Wong Yang Sung then instituted a habeas corpus proceeding, alleging that the hearing before the immigration official did not meet the requirements of the Administrative Procedure Act.

The Court held that the procedure set forth in the Administrative Procedure Act was necessary to preserve the immigration statute from invalidity and that § 5 of the Act 5 U.S.C. § 1004, applied to such situations. However, it declared,

> "[w]e think that the limitation to hearings 'required by statute' in § 5 of the Administrative Procedure Act exempts from that section's application only those hearings which administrative agencies may hold by regulation, rule, custom, or special dispensation; not those held by compulsion.[5]"

Wong Yang Sung cannot be read to require a hearing in all cases since it stated only that in the absence of any violation of due process, hearings were compulsory only when other legislation made them mandatory. This interpretation has been followed in subsequent cases including LaRue v. Udall, 116 U.S.App.D.C. 396, 324 F.2d 428, 432 (1963) Cert. denied 376 U.S. 907, 84 S.Ct. 660, 11 L.Ed. 2d 606 (1964) which stated:

> "§ 5 of * * * [Administrative Procedure Act] applies only to agency action which the agency statute provides must be preceded by a hearing."

It seems clear that the Interstate Commerce Act and the rules and regulations pursuant thereto do not demand a hearing in a § 212(b) proceeding, so that the Administrative Procedure Act has no application in this case.

It should be emphasized that if the Commission or one of its Boards acted arbitrarily and capriciously in deciding that an application came within § 212

---

5. Gardner v. United States, 239 F.2d 234, 238 (5th Cir. 1956); Brotherhood of Locomotive Engineers v. United States of America, 217 F.Supp. 98 (N.D.Ohio 1963);

Cf. Riss & Co. v. United States, 117 F. Supp. 296 (W.D.Mo.1952) aff'd per curiam 346 U.S. 890, 74 S.Ct. 221, 9 L.Ed. 393 (1950).

(b), this court would be faced with an entirely different issue, Brooks Transportation Company v. United States of America, Civil No. 2431, E.D.Va., May 13, 1957 at p. 9, but no question of due process was argued. In the present case, the Transfer Board had affidavits from the presidents of the transferor and transferee certifying that the number of units used by both in interstate commerce did not exceed twenty. Furthermore, it had no contradictory affidavits and no other concrete evidence from the plaintiffs except the transferee's annual report which was ambiguous at best and was subsequently shown not to support the plaintiff's position. It cannot be said that the Commission acted unreasonably under the circumstances.

## II.

The second question presented is whether the Commission acted within the scope of its authority in allowing the transfer of the rights to transport chemicals in bulk without a hearing when the plaintiffs contended that the authority to transport chemicals in bulk lay dormant.

Under § 212(b), the Commission may establish rules and regulations to accomplish the transfer of operating rights. Pursuant to that provision, the Commission has promulgated a rule that with certain exceptions a transfer will be denied if operating rights are dormant.[6]

The transferor's certificate of Public Convenience and Necessity as to chemicals provided for transportation;

"From New York, N. Y., and points and places in New Jersey, to points and places in Massachusetts (except from New York, N. Y. to Worcester, Boston, and points and places within 25 miles of the State House in Boston). Return with no transportation for compensation except as otherwise authorized, to the above specified origin points."

█ █ It is obvious from a reading of it that the Certificate of Public Convenience and Necessity did not require the transferor to transport chemicals in bulk but rather granted an unrestricted right to transport such items between certain geographical points. Such a certificate permits any type of equipment to be used. Clark Transport Co. Extension-Farm Tractors 62 M.C.C. 555, 563–64 (1954); David B. Worster Extension-Western New York Counties 54 M.C.C. 733, 737 (1952); Tidewater Transfer Company, Inc. Extension of Operation-Wines in Bulk 47 M.C.C. 496 (1947). Furthermore, a motor carrier's authority is not automatically considered dormant under an unrestricted certificate if it fails to use every possible means of transportation. See Berman's Motor Express Inc. Purchase-Lang Storage and Transfer 90 M.C.C. 807 (1963).

█ It is clear that the Interstate Commerce Commission through its Transfer Board did not abuse its discretion or wilfully violate its own regulation in not finding dormancy and in denying a hearing on this question especially in light of the transferor's Certificate of Public Convenience and Necessity, the transferor's affidavit that it made frequent and diversified movements in the transportation of chemicals, and the plaintiffs' failure to present concrete evidence to the contrary.

For the foregoing reasons, the court refuses to set aside, vacate and annul Order No. MC–FC 65847 of the Interstate Commerce Commission permitting the

---

6. *Cessation of Operations.* The mere cessation of operations by the holder of an operating right shall not be deemed to require denial of the proposed transfer of such right. If, however, a cessation of operations has occurred, which fact shall be stated in the application, and operations have not been conducted under the considered rights for a substantial period of time, the proposed transfer will be denied unless the holder shows that such discontinuance was caused by circumstances over which he had no control. The Commission may require, in an appropriate case, proof of the nature and extent of operations conducted under the operating right for a period of 6 months preceding the date of the request for such evidence. 49 C.F.R. § 179.5(b).

Bianchi Motor Transportation Inc. to transfer certain operating rights to Roy Brothers.

### ORDER

And Now, this 12th day of November 1965, it is hereby Ordered and Decreed that the above mentioned Order of the Interstate Commerce Commission shall not be set aside, vacated or annulled, and it is further Ordered and Decreed that no injunction shall issue denying enforcement of the Commission's Order.