**MONUMENTAL MOTOR TOURS, INC., Clyde's Charter Bus Service, Inc., Clyde B. Didlake, doing business as Clyde's Charter Bus Service**

v.

**UNITED STATES of America, and Interstate Commerce Commission**

and

**Ridgeway Motor Coach, Inc., and National Motor Tours, Inc., Intervening Defendants.**

**Civ. No. 21154.**

United States District Court,
D. Maryland.
July 31, 1970.

---

Erwin Ira Ulman, Baltimore, Md., and S. Harrison Kahn, Washington, D. C., for plaintiffs.

Richard W. McLaren, U. S. Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Stephen H. Sachs, U. S. Atty., D. Maryland, and Nevett Steele, Jr., Asst. U. S. Atty., for defendant the United States.

Robert W. Ginnane, Gen. Counsel, and Philip W. Getts, Atty., I. C. C., for defendant I. C. C.

Charles McD. Gillan, Jr., Baltimore, Md., Russell R. Sage, and Major, Sage, Vance & King, Alexandria, Va., for intervening defendant Ridgeway Motor Coach, Inc.

Joel Margolis, Baltimore, Md., for intervening-defendant National Motor Tours, Inc.

Before WINTER, Circuit Judge, and KAUFMAN and HARVEY, District Judges.

FRANK A. KAUFMAN, District Judge.

National Motor Tours, Inc. (National) and Ridgeway Motor Coach, Inc. (Ridgeway), both intervenors in this case, entered into a contract on May 10, 1968 pursuant to which Ridgeway agreed to purchase the certificate of public convenience and necessity previously issued by the Interstate Commerce Commission (the Commission) to National to operate charter services and special services.[1] Thereafter, National and Ridgeway filed an application under section 212(b) of the Interstate Commerce Act, 49 U.S.C. § 312(b), and the Commission's applicable regulations set forth in 49 C.F.R. § 1132,[2] seeking approval of

1. In Fordham Bus Corporation, Common Carrier Application, 29 M.C.C. 293 (1941), the Commission stated:

Charter service contemplates the transportation of groups such as lodges, bands, athletic teams, schools, or other travel groups, assembled by someone other than the carrier, who collectively contract for the exclusive use of certain equipment for the duration of a particular trip or tour. Special service, on the other hand, contemplates that service rendered generally on week-ends, holidays, or other special occasions to a number of passengers which the carrier itself has assembled into a travel group through its own sales to each individual passenger of a ticket covering a particular trip or tour planned or arranged by the carrier.

2. Section 212(b) of the Interstate Commerce Act, 49 U.S.C. § 312(b) states:

Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe.

the transfer to Ridgeway of National's said operating rights. Permission to transfer was initially denied by the Commission's Transfer Board because the proposed transfer was not in conformity with section 1132.5(b) of the Commission's regulations. In its Order, the Commission found that National's corporate charter was invalid during 1967, thereby rendering unlawful operations conducted during the period May 22, 1967 through September 4, 1967, inclusive, and that National was not operating under the considered rights at the time of the filing of the application or during a period of seven months prior thereto due to financial difficulties not shown to have been beyond its control.[3] Thereupon, National and Ridgeway petitioned for reconsideration on the grounds that National's charter had been reinstated on February 16, 1968 and that pursuant to Md. Ann. Code art. 23, § 85(d) (1966 Repl. Vol.), that revival was retroactively applicable to the

date of revocation and thus rendered legal the operations of National during the period in 1967 and 1968 falling between the dates of forfeiture and revival of National's corporate charter. Division 3 of the Commission, acting as an Appellate Division, reversed the Transfer Board's earlier denial and approved the application to transfer, stating:

*It appearing,* That the transfer of the operating rights set forth in the appendix hereto is not subject to Section 5 of the Interstate Commerce Act and will not result in unlawful ownership or control of a motor carrier; and that said transferee is fit, willing, and able properly to perform the service in question and to conform to the provisions of the act and the requirements, rules and regulations prescribed thereunder in accordance with the terms of the authority specified in the appendix; and

*It further appearing,* That the transfer of the operating rights set forth

Section 5(10) of that Act, 49 U.S.C. § 5(10) provides:

Nothing in this section shall be construed to require the approval or authorization of the Commission in the case of a transaction within the scope of paragraph (2) where the only parties to the transaction are motor carriers subject to chapter 8 of this title (but not including a motor carrier controlled by or affiliated with a carrier as defined in section 1(3)), and where the aggregate gross operating revenues of such carriers have not exceeded $300,000 for a period of twelve consecutive months ending not more than six months preceding the date of the agreement of the parties covering the transaction.

The Commission by regulation has provided, 49 C.F.R. § 1132.3:

Except as may be otherwise provided in this part, the proposed transfer described in any such application shall be approved if it is shown that the proposed transaction is not subject to the provisions of section 5 of the Interstate Commerce Act; and that the proposed transferee is fit, willing, and able properly to perform the service authorized by the operating rights sought to be transferred, and to conform to the provisions of the Interstate Commerce Act and the requirements, rules and regula-

tions of the Commission thereunder. Otherwise, the application shall be denied.

The Commission has further provided, 49 C.F.R. § 1132.5(b):

The mere cessation of operations by the holder of an operating right shall not be deemed to require denial of the proposed transfer of such right. If, however, a cessation of operations has occurred, which fact shall be stated in the application, and operations have not been conducted under the considered rights for a substantial period of time, the proposed transfer *will be denied* unless the holder shows that such discontinuance was caused by circumstances over which he had no control. The Commission *may* require, in an appropriate case, proof of the nature and extent of operations conducted under the operating right for a period of 6 months preceding the date of the request for such evidence. [Emphasis supplied.]

3. The record before the Commission seems to indicate that National operated certain charter operations in 1967; that National ran into financial difficulties; and that certain of *its assets were sold* at a sheriff's sale. The extent, if any, in which National engaged in special operations is not revealed by the record before the Commission.

in the appendix is in conformity with the Rules and Regulations Governing Transfers of Rights to Operate as a Motor Carrier in Interstate or Foreign Commerce (49 C.F.R. Part 1132) including Section 1132.5(b):

It is ordered, That the petition be, and it is hereby granted; that the proceeding be, and it is hereby, reopened for reconsideration; and that the order of January 20, 1969, be, and it is hereby, vacated and set aside.

It is further ordered, That the transfer to the transferee named above of the operating rights specified in the appendix hereto be, and it is hereby, approved and authorizes [sic] subject to the terms and conditions set forth herein.

\*     \*     \*     \*     \*     \*

After that order was published in the Federal Register, plaintiffs, who operate charter and/or special operations under certificates from the Commission, filed a petition for reconsideration which was dismissed, without a hearing, by the Commission, the latter stating only:

It appearing, That the petition sets forth no facts or arguments which were not previously considered, or which are sufficient to establish that the transfer was not properly approved under the Rules and Regulations Governing Transfers of Rights to Operate as a Motor Carrier in Interstate or Foreign Commerce (49 C. F.R. § 1132), including Section 1132.5 (b) thereof; and that an oral hearing is not necessary to a determination of the matter:

It is ordered, That the petition be, and it is hereby, denied.

\*     \*     \*     \*     \*     \*

Plaintiffs thereupon instituted these proceedings in this Court, seeking a temporary restraining order, an interlocutory injunction, the constitution of a three-judge court, and reversal of the Commission's order approving the transfer. The motions for a temporary restraining order and/or interlocutory injunction were withdrawn in open Court after the parties hereto agreed among themselves that, pending determination herein by this three-judge Court, Ridgeway would operate not more than two buses under the authority acquired by it from National.

The jurisdiction of this Court under 28 U.S.C. §§ 1336, 2284, 2321–2325 and 5 U.S.C. § 706 (section 10 of the Administrative Procedure Act) is not contested and clearly exists. Bell Lines, Inc. v. United States, 306 F.Supp. 209, 212–213 (S.D.W.Va.1969), aff'd per curiam, 397 U.S. 818, 90 S.Ct. 1517, 25 L.Ed.2d 804 (1970), upon the authority of American Farm Lines v. Black Ball Freight Service, et al., 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970).

## I.

Plaintiffs contend that the Commission was required to hold a hearing before denying their motion for reconsideration. That contention has been considered and rejected by two different three-judge courts in A. L. Root Transportation, Inc. v. United States, 280 F. Supp. 152 (D.Vt.1968), and in Chemical Leaman Tank Lines, Inc. v. United States, 251 F.Supp. 269 (E.D.Pa.1965). In the Root case, Judge Leddy concluded (at 157):

Neither Section 212(b) of the Interstate Commerce Act, 49 U.S.C. § 312(b), nor due process requires a hearing upon this petition for reconsideration, or any oral presentation thereon.

Earlier, Judge Davis wrote in Chemical Leaman (at 272):

The first question presented to the court is whether the Interstate Commerce Commission acted within the scope of its authority in finding that the transfer application was subject to § 212(b) of the Interstate Commerce Act and not § 5 of the Act without holding the requested hearing.

The purpose of Congress in carving out an exemption under § 5(10) of the Act was to permit the transfer of operating rights between small motor

carriers as expeditiously as possible without the delay and lengthy administrative procedures involved under § 5. As explained by Senator Wheeler, the sponsor of the 1935 Motor Carrier Act:

" * * * we eliminate from this provision [§ 5] such a case, for example, as that of two small operators who might want to get together, and we made it apply only to cases where they had more than 20 vehicles, so that the *small operators could get together without the necessity* of going through a great deal of red tape with the Commission."[3]

3. 79 Cong.Rec. 5655 (1935) (Emphasis added).

The Supreme Court in United States v. Resler, 313 U.S. 57, 59, 61 S.Ct. 820, 821, 85 L.Ed. 1185 (1941) declared:

"Read together, the two sections [§ 5(10) and § 212(b)] can mean only that a transfer involving not more than twenty vehicles is governed by § 212(b) and the regulations pursuant to it. * * *"

Section 212(b) of the Interstate Commerce Act provides:

"Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe".

Under the rules and regulations of the Commission prescribed under that section, no hearing is required on the initial application, and it may be approved *ex parte*. Once the order of approval has issued and been published any interested party may file a timely petition for reconsideration together with a request for a hearing. * * * [Footnote 4 omitted].

The Commission's own regulations give it the discretionary right to hold or refuse to hold a hearing under 49 C.F.R. § 1132.5(b). An examination of the record reveals no basis for concluding that the Commission abused that discretion. The record itself appears clearly to disclose most of the essential facts, and those facts not so revealed could seemingly be easily obtained from National's own records and reports to the Commission.[4]

Nor did the Administrative Procedure Act require any hearing by the Commission. Section 5 of the Administrative Procedure Act, 5 U.S.C. § 554(a), provides for adjudicatory hearings in "every case of adjudication *required* by statute to be determined on the record after opportunity for an agency hearing" (emphasis supplied). Mr. Justice Jackson, in Wong Yang Sung v. McGrath, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950), in construing that section, wrote:

We think that the limitation to hearings "required by statute" in § 5 of the Administrative Procedure Act *exempts* from that section's application only those hearings which administrative agencies may hold by *regulation*, rule, custom, or special dispensation; not those held by compulsion. * * * (Emphases supplied).

The courts in *Chemical Leaman* and *Root*, after discussing section 5 and the Supreme Court's analysis of the latter in *Wong Yang Sung*, rejected the contention that the Administrative Procedure Act imposed upon the Commission, in the context of a section 312(b) proceeding, any hearing requirement.[5] This Court agrees with the conclusions reached by those courts.

4. See n. 3 *supra* re whether National utilized its special service rights.

5. Sections 7 and 8 of the Administrative Procedure Act, 5 U.S.C. §§ 556, 557, setting forth requirements with regard to hearings and decisions, are likewise not applicable herein in view of the nonapplicability of section 5. See A. L. Root Transportation, Inc. v. United States, 280 F.Supp. *supra* at 157 n. 7.

## II.

Section 10 of the Administrative Procedure Act (5 U.S.C. § 706) is, however, one of the statutes which confers authority upon this three-judge Court to review the Commission's order granting to National and Ridgeway the approval of the transfer sought by them. Bell Lines, Inc. v. United States, 306 F.Supp. *supra* at 212–213. That section is entitled "Scope of review." Its first sentence reads as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. * * *

In the *Bell* case, the Court, in considering the grant by the Commission of temporary authority substantially to expand service, wrote (at 213):

> The courts have developed workable principles which may be readily and practically applied. Agency action committed to agency discretion contemplates and implies a lawful exercise of discretion. Agency action which is arbitrary and capricious abuses discretion and constitutes an unlawful exercise of discretion. Our system of jurisprudence cannot tolerate such action. The judiciary must fairly assume that the legislative branch did not contemplate such excesses and abuses and, in the enactment of the pertinent statutes at various times, omitted language clearly defining the rights of judicial review here considered and the extent and scope thereof. The Court holds that it does have jurisdiction to review the temporary authority orders of the Commission upon complaint fairly alleging that the Commission has acted arbitrarily and capriciously and in abuse of its discretion. [Citations omitted].

In Chesapeake Motor Lines v. United States, 153 F.Supp. 812 (D.Md.1957), Judge Soboleff, on behalf of a three-judge District Court, remanded the case to the Commission,[6] stating, *inter alia* (at 815–816):

> When administrative officials merely turn "thumbs up" or "thumbs down" without adequate explanation, little opportunity is left for intelligent review. Two alternatives are then offered the reviewing tribunal if it undertakes a final disposition of the complaint. The first is automatically and uncritically to rubber stamp the administrative action without any effective review; the other is to undertake to search out the matter independently, with the inevitable tendency to substitute judicial for administrative judgment. Both alternatives are undesirable and alien to the traditional scheme, and can be avoided only

---

6. The Commission's order had construed an existing Commission certificate, granting the right to transport "processed meats," as excluding the right to transport "fresh meat." In so doing, Judge Soboleff (at 815) noted:

> If by excluding fresh meat from the definition of "processed," the latter term would be emptied of all meaning, then such exclusion might well be deemed arbitrary. On the other hand, if in deciding that fresh meat was not included within the scope of its earlier grant of authority to haul "processed" meat, the grant would still be left with some meaningful content, the Commission's decision might well be allowable. We have no way of knowing from the opinion what, if anything, remains in the category "processed."

> Giving consideration to the classification of other products might furnish the key to our question, or might show that the suggested inquiry is not pertinent, and thus settle the existing doubt.

> In interpreting the meaning of one of its certificates the I.C.C. is ordinarily not required to lay down a complete code delineating everything embraced in a previously established commodity category. It need only decide the particular case. It is necessary, however, for the Commission to indicate its definition of terms with such clarity that the reviewing court may at least see if there is a reasonable basis for the decision.

if administrators make full exposition of the reasons for the actions they take.

The point is that without a broader disclosure we cannot appraise the Commission's action to the degree required of us under principles of review laid down in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 [1951]. While we are fully mindful that the Commission is one "appointed by law and informed by experience," and we are prepared to accord its determinations, both of law and fact, the deference to which they are entitled, the Court too has a responsibility. Its task, though limited in scope, cannot be performed without knowledge of the underlying reasoning and effect of the Commission's decision. "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." [Citations omitted].

■ This Court notes the following questions which have not been answered by the Commission in Orders previously entered by it in this case: (1) Did National's activities and lack of activities in 1967 and 1968, and their relationship to the time National and Ridgeway instituted and concluded their negotiations, constitute a "cessation of operations" within the meaning of 49 C.F.R. § 1132.5(b)?[7]  (2) If one or more of those events, or any other events, constituted such a "cessation of operations," did that "cessation" continue for "a substantial period of time"?  (3) Did National have "no control" over the circumstances which caused any such "cessation" during "a substantial period of time"?  The Commission, in *granting* the transfer authority, gave no inkling of why it concluded that the National-Ridgeway transfer application should be approved. This is therefore not a case in which the Commission, after reaching

an initial decision and stating the grounds therefor, failed to state its reasons for refusing, upon a request for reconsideration, to change its mind. See Watkins Motor Lines, Inc. v. United States, 243 F.Supp. 436, 443 (D.Neb. 1965); and Yourga v. United States, 191 F.Supp. 373 (W.D.Pa.1961), both three-judge court cases involving review of orders of the Commission. In this case, the difficulty is that the Commission failed, when it approved the transfer from National to Ridgeway, to state its reasons with regard to the applicability, or nonapplicability, of the several relevant portions of the Commission's own regulation as set forth in 49 C.F.R. § 1132.5(b). It is that failure, not the fact that the Commission turned down plaintiffs' requests for subsequent reconsideration, that is of concern to this Court at this time.

"[R]eviewing courts have a right to know the basis for the Commission's rulings." Central & Southern Motor Freight Tar. Ass'n v. United States, 273 F.Supp. 823, 834 (D.Del.1967). "[T]he courts are not required to speculate as to the basis for an administrative agency's conclusions." Bell Lines, Inc. v. United States, 263 F.Supp. 40, 44 (S.D. W.Va.1965). In both of those cases, the three-judge courts relied upon Mr. Justice White's opinion in Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), requiring that the Commission, in exercising its discretion, make findings of fact which reveal the basis of that exercise.

Accordingly, this case is hereby remanded to the Commission to state clearly and precisely, in the context of its own regulatory language as set forth in 49 C.F.R. § 1132.5(b), its reasons for approving or not approving, in whole or in part, the National-Ridgeway transfer application. In so doing, the Commis-

---

7. If the Commission finds that there was such a "cessation of operations," the Commission is asked to state and explain the reasons why it reaches that conclusion, including, *inter alia*, whether National's operations were in fact seasonal in nature and whether they had in fact become dormant when the contract of sale was signed by National and Ridgeway on May 17, 1968.

sion is further directed to address itself specifically to the transferability of (1) National's charter service rights and (2) National's special service rights. In so directing, this Court in no way intimates that there is or is not any need to treat those two types of rights differently, or whether, in the context of a section 212(b) proceeding, any such difference exists, or if it does exist, whether any different treatment is required. Upon remand, the Commission need not, unless it desires so to do in the appropriate exercise of its own discretion under 49 C.F.R. § 1132.5(b), hold any hearing.

It is so ordered.