**CARGO EXPRESS, INC., an Ohio Corporation, and Ohio Fast Freight, Inc., an Ohio Corporation, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. No. C 71–189.

United States District Court,
N. D. Ohio, E. D.

March 21, 1972.

John A. Kundtz and Daniel W. Hammer, Thompson, Hine & Flory, Cleveland, Ohio, Paul Beery, Beery & Pemberton, Columbus, Ohio, for plaintiffs.

Frederick Coleman, U. S. Atty., Robert R. Bauer, Cleveland, Ohio, Lee A. Rau, Dept. of Justice, Richard H. Streeter, Interstate Commerce Comm., Washington, D. C., for defendants.

## MEMORANDUM

Before CELEBREZZE, Circuit Judge, GREEN, District Judge, and KALBFLEISCH, Senior District Judge.

KALBFLEISCH, Senior District Judge.

Pursuant to 28 U.S.C. §§ 1336, 1398, 2284, and 2321–2325, plaintiffs have brought an action to set aside an order of the Interstate Commerce Commission (hereinafter called Commission) directed against them. A three-judge court has been convened to hear this action. 28 U.S.C. § 2284. Plaintiff Cargo Express, Inc. (hereinafter called Cargo) is an Ohio corporation desirous of becoming a common carrier of certain commodities by motor vehicle, while plaintiff Ohio Fast Freight, Inc. (hereinafter called OFF) is presently a Commission authorized common carrier by motor vehicle.

On or about April 8, 1969, pursuant to § 212(b) of the Interstate Commerce Act (hereinafter called Act) (49 U.S.C. § 312(b)), Cargo and OFF sought Commission approval to transfer from OFF to Cargo a portion of OFF's Certificate of Public Convenience and Necessity, MC–14702 (Sub. No. 17), which reads as follows:

"Iron, steel, manufactured iron and steel articles, motors, machinery, and machinery parts between points in Portage County, Ohio, on the one hand, and, on the other, Buffalo and Rochester, N.Y., all points in Indiana, points in Illinois and the Chicago, Illinois commercial zone as defined by the Commission, points in Erie, Crawford, Mercer, Venango, Lawrence, Beaver, Washington, Allegheny, Butler, and Greene Counties, Pa., those in Hancock, Brook, Ohio, and Marshall Counties, West Virginia, and those in Michigan on and south of Michigan Highway 46."

Citing the inadequate financial position of the transferee, Cargo, the Commission denied the application on May 21, 1969. On August 4, 1969, a petition by Cargo and OFF for reconsideration of the order of May 21 was denied.

On or about September 5, 1969, Cargo filed a revised application under § 212(b) of the Act "identical in content to the first application, except additional financial information as to the transferee was included in the second application," to wit, the proposed transferor (OFF) was, in lieu of debt securities, to receive preferred stock of the transferee. On October 31, 1969, the Commission (by its Motor Carrier Board) approved and authorized the transaction.

On December 3, 1969, one Ace Doran Hauling & Rigging Co., as an interested party, filed a petition for reconsideration of the Board's order. Cargo filed a response thereto, and on February 19, 1970, the Commission (by Division 3 acting as an Appellate Division) granted Doran's petition for reconsideration. That order, in pertinent part, is as follows:

" * * * That the proposed division of rights would be contrary to the provisions of section 1132.5(a) (1) * * * (49 C.F.R. 1132) for the reason that the proposed division of rights would create duplicating rights as defined in section 1132.1(c) of said rules; and would be contrary to section 1132.1 [sic] (a) (2) of said Rules, for the reason that the proposed division of the operating rights granted in * * * would constitute a minute and multiple division of operating rights so that numerous carriers might ultimately operate under rights initially granted as a unit."

Cargo then proceeded to file a petition for reconsideration of the February 19, 1970 order, which petition was denied by the Commission on May 4, 1970. In that denial the Commission made the following statement:

" * * * That the petition presents no facts or arguments not previously considered or which would warrant a conclusion that the proposed transfer is in conformity with Sections 1132.5(a) (1), 1132.1(c) and 1132.1 [sic] (a) (2); of the Rules * * * 49 C.F.R. 1132; that proposed amendments and restrictions to the operating rights have not been shown to be in the public interest."

Section 212(b) of the Act reads as follows:

"Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe." (See 49 C.F.R. 1132.)

In enacting § 212(b) Congress intended to exempt small carriers from the stringent procedural requirements of § 5 of the Act, thereby expediting such transfers. Bradley v. United States, 322 F.Supp. 369, 371–372 (D.Alaska 1971); Chemical Leaman Tank Lines, Inc. v. United States, 251 F.Supp. 269, 272–273 (E.D.Pa.1965); Stearn v. United States, 87 F.Supp. 596, 601 (W.D.Va.1949). Obviously, therefore, the transfer rules

(49 C.F.R. 1132) should not be more restrictively applied than the criteria used by the Commission in comparable § 5 proceedings. *Stearn,* supra, 601–602. Section 212(b) proceedings can be ex parte, without a formal hearing. A. L. Root Transportation, Inc. v. United States, 280 F.Supp. 152, 155–156 (D.Vt. 1968); Leaman, supra; Monumental Motor Tours, Inc. v. United States, 316 F. Supp. 663, 666–667 (D.Md.1970); *Bradley,* supra.

■ A district court may only set aside orders of the Commission if they are not supported by substantial evidence; are arbitrary or capricious (without rational basis); an abuse of discretion (e. g. petitions for reconsideration); in excess of statutory jurisdiction; or contrary to the Constitution. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 533–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Lake Shore Motor Freight Company v. United States, 310 F.Supp. 957, 959–960 (N.D. Ohio, E.D.1970 [1968 sic]); Dixie Ohio Express, Inc. v. United States, 263 F. Supp. 993, 999 (N.D.Ohio, E.D.1966); 5 U.S.C. § 706. The Commission will be presumed to have properly performed its duties and due deference will be paid to its expertise. Boston and Maine Railroad v. United States, 208 F.Supp. 661, 670 (Mass.1962), aff'd 371 U.S. 26, 83 S.Ct. 117, 9 L.Ed.2d 95; Eastern Central Motor Carriers Ass'n v. United States (per curiam), 239 F.Supp. 591, 594 (D.D.C.1965); Campbell Sixty-Six Express, Inc. v. United States, 258 F. Supp. 529, 532–533 (W.D.Mo.1966). Any petition for reconsideration is addressed to the sound discretion of the Commission, the exercise of which, absent abuse, will not be disturbed. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 514–519, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Root, supra, 280 F.Supp. 156. Nonetheless, a reviewing court is not to rubber stamp a Commission decision. *Monumental,* supra, 316 F.Supp. 668–669; *Campbell,* supra, 258 F.Supp. 533.

The principal issues herein are: (1) whether the Commission's written reasons for denying the transfer were arbitrary and capricious and (2) whether the Commission abused its discretion in denying plaintiffs' petition for reconsideration.

## THE DUPLICATING RIGHTS RATIONALE

■ 49 C.F.R. 1132.1(c) and 1132.-5(a) (1), as pertinent, read as follows:

*"Duplicating rights.* Operating rights which authorize the transportation of passengers, or of the same commodities, from and to, or between the same points." (1132.1(c).)

*"Division of rights.* An application for transfer of part of an operating right as to routes or commodities will be denied if it is found that the partition (1) would create duplicating rights as defined in § 1132.1(c) * * *." (1132.5(a) (1).)

In order to fully understand why the duplicating rights rationale of the Rules applies herein, it is necessary to consider some additional facts.

In 1966, pursuant to § 5 of the Act, OFF filed with the Commission an application to acquire, through the purchase of stock, the operating rights of Trumbull Cartage Company (hereinafter called Trumbull) and a related § 207 (49 U.S.C. § 307) application for a certificate of public convenience and necessity encompassing Trumbull's operating rights. On January 20, 1967, pursuant to § 210a(b) of the Act (49 U.S.C. § 310a(b)), OFF received temporary authority to lease and operate the Trumbull properties pending final determination of the § 5 proceeding. The Commission, on May 19, 1969, approved both applications (109 M.C.C. 88 (1969)) and the parties consummated the merger on December 11, 1969.

The Trumbull operating rights acquired by OFF from this merger encompass the transportation of general commodities, with exceptions not here perti-

nent, between points in Trumbull County and Youngstown on the one hand, and, on the other, points in Ohio over irregular routes. (MC–14702 (Sub-No. 16).) See Ohio Fast Freight, Inc.-Control and Merger-Trumbull Cartage Co., 109 M.C.C. 88 (1969). The OFF certificate (MC–14702 (Sub.-No. 17)), a portion of which was sought to be transferred herein, encompasses the transportation of iron and steel, among other things, between Portage County and six other contiguous counties, including Trumbull, in eastern Ohio, on the one hand and, on the other hand, points in six eastern states over irregular routes. Thus, by using any point in Trumbull County as a gateway (a common authorized point of service) and tacking (a combination of separately described routes at a common point to provide continuous through service) the retained Sub.-No. 17 authority with the acquired Trumbull operating rights, OFF could, albeit at times indirectly, transport iron and steel, etc., between points in Portage County on the one hand and, on the other hand, points in the aforementioned six eastern states. Consequently, a violation of 49 C.F.R. 1132.5(a) (1), as defined in 49 C.F.R. 1132.1(c), would result. See Frederickson Motor Express Corp.-Purchase-Cope, 104 M.C.C. 670, 673 (1968), and Peoples Cartage, Inc.-Purchase (Portion)-Pony Express, Inc. (decided September 25, 1970) (Section 5 cases). This being so, the decision of the Commission as it concerns duplicating rights was not arbitrary and capricious.

## THE MINUTE AND MULTIPLE RATIONALE

The overall factual and legal situation, as shown by the record, requires a full and complete convassing of the minute and multiple rationale. 49 C.F.R. 1132.-5(a) (2), as pertinent, reads as follows:

"*Division of Rights.* An application for transfer of part of an operating right as to routes or commodities will be denied if it is found that the partition * * * [would] (2)

* * * permit the minute and multiple division of operating rights so that numerous carriers might ultimately operate under rights initially granted as a unit * * *."

Beyond doubt, the OFF-Cargo transfer is a single split of authority (operating rights) that the Commission initially granted as a unit. Despite this, the Commission, for two distinct and different reasons, maintains that 1132.5(a) (2) has been violated.

■ First of all, the Commission says that 49 C.F.R. 1132.5(a) (2) is infringed, because this transfer could ultimately lead to numerous carriers operating in an area originally granted by the Commission as a unit. (There must be more than two carriers in order to be considered numerous.) Nevertheless, any further splits of OFF's retained Sub.-No. 17 authority or of Cargo's acquired authority would necessarily be subject to Commission regulation through either 49 U.S.C. § 5 or 49 U.S. C. § 312(b). Consequently, there is no rational basis for the denial of a § 212(b) transfer solely on the ground that it might in the future lead to further splits and more carriers in an area originally granted as a unit.

■ Secondly, the Commission appears to be saying that the minute and multiple portion of 49 C.F.R. 1132.5(a) (2) commands it to forbid a transfer solely because that transfer would atomize a certificate (e. g., as herein, the split of one county, Portage, from a seven-county area). The Court, despite 1132.5(a) (2)'s language (minute *and* multiple, not minute *or* multiple) would be more favorably inclined to accept the Commission's atomization interpretation of 1132.5(a) (2) if this constituted the Commission's initial use of the minute and multiple rationale or its initial interpretation of the minute and multiple requirement of 1132.5(a) (2). However, numerous § 5 cases have permitted an initial single split of authority (operating rights) even though it might result in, or in disregard of, any possible atomization. See, e. g., Jones-Purchase-

Cook, 50 M.C.C. 601 (1948); Mercury Freight Lines, Inc.-Purchase (Portion)-Cole, 109 M.C.C. 123 (1969); Pacific Northwest Motor Freight Lines, Inc.-Purchase (Portion)-Paffile, 109 M.C.C. 463 (1970). Clearly, the Commission cannot, without some explanation, interpret 49 C.F.R. 1132.5(a) (2) as forbidding atomization and adopt a contrary interpretation in § 5 cases. If the Commission feels that the atomization of areas originally granted as a unit to one carrier is not in the public interest in § 212(b) proceedings, it has the power to promulgate an unambiguous, reasonable rule dealing with that problem. However, on this record, or lack thereof, the Commission's atomization construction of 1132.5(a) (2) (which concentrates on the word "minute" and ignores the word "multiple") is unreasonable and without rational basis.

## RECONSIDERATION: AN ABUSE OF DISCRETION?

 Plaintiffs' petition for reconsideration of the February 19, 1970 order of the Commission denying the OFF-Cargo transfer contained a proposal, since repeated at oral argument that OFF was amenable to having imposed on its retained Sub.-No. 17 operating rights a restriction against further splitting thereof and would accept a restriction on its acquired Sub.-No. 16 operating rights against service to Portage County. These two restrictions, absent the atomization construction of 49 C.F.R. 1132.5(a) (2), would eliminate the violations of the transfer rules that the Commission cited in denying the OFF-Cargo transfer.

 The Commission's present position on restrictions is that it will not accept any applicant-proposed restrictions on operating rights unless the applicant, by clear and convincing evidence, demonstrates that said restrictions are in the public interest. Fox-Smythe Transportation Co.-Extension-Oklahoma, 106 M.C.C. 1 (1967). In its denial of the OFF-Cargo petition, the Commission said only "that proposed amendments and restrictions to the operating rights have not been shown to be in the public interest." Assuming that the transfer rules embody the public interest, it therefore logically and reasonably follows that restrictions which would appear to eliminate violations of said rules must be presumed to be in the public interest. In order for the Commission to overcome this presumption and reject the proposed restrictions, it would be obliged to proffer some reason or reasons which go beyond the mere assertion that said restrictions were not shown to be in the public interest.

On this record it must be held that the Commission has clearly abused its discretion. Accordingly, this case will be remanded to the Commission for further action. Further consideration may well include a complete examination, explanation and clarification of the atomization rationale.

This case, therefore, will be remanded to the Commission for it either to (1) accept plaintiffs' restrictions and, as restricted, approve the OFF-Cargo transfer, or (2) through acceptable procedures advance additional satisfactory reasons, beyond those previously articulated, demonstrating why the proposed OFF-Cargo transfer is not in the public interest.

## EXCERPT FROM ORAL ARGUMENT OF MR. BEERY

### APPENDIX.

MR. BEERY:

We are taking their argument. Let's assume it is the same as a permanent. We are still entitled to win because the solution we are asking from the Court is that, number one, the first order should be reinstated because it was only a temporary. But let's assume that you decide it's the equivalent of a permanent. The restriction we offer satisfies the regulation and, therefore, we are asking this Court for either one of two decisions.

One, refer it back and say since it's temporary there was not a permanent

merger of the two services, and, therefore, you should permit Ohio Fast Freight to transfer the one service to cargo and retain the service it was buying from Trumbull to the tune of $80,000.

Or, if you decide there was a merger, because it is temporary we will take out our right to serve Portage County in total by the restriction and then issue an order to the commission to transfer the Cargo right provided the plaintiffs places in the certificate of Ohio Fast Freight the restriction against service to Portage County.

We have no objection to either one. We feel that we were wrong—

JUDGE KALBFLEISCH: May I interrupt you a moment? Jay, will you type that statement for us that counsel just made? Can you mark it in your notes? I would like to have that, what is acceptable to him for his client.
* * *